**Athanasios THEODOROPOULOS, Petitioner–Appellee,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent–Appellant.**

**Docket No. 01–2715.**

United States Court of Appeals, Second Circuit.

Submitted: June 21, 2002.

Decided: Dec. 18, 2002.

Amended: Dec. 20, 2002.

Superseded: Jan. 12, 2004.

Athanasios Theodoropoulos, pro se, c/o Lori Sherman & Associates, Bearsville, N.Y. (Barry D. Leiwant and Deirdre D. Von Dornum, Legal Aid Society, Federal Defender Division, Appeals Bureau, New York, NY, on supplemental briefs), for Petitioner–Appellee.

John C. Cunningham, Senior Litigation Counsel, Office of Immigration Litigation, United States Department of Justice (Robert D. McCallum, Jr. and Peter D. Keisler, Assistant Attorneys General, Donald E. Keener, Deputy Director, and Linda S. Wendtland, Assistant Director, on the briefs), Washington, DC, for Respondent–Appellant.

Katherine Goldstein, Wilmer, Cutler & Pickering, New York, NY, for Amici Curiae The New York State Defenders Association, The Legal Aid Society of the City of New York, and The New York State Association of Criminal Defense Lawyers in support of Petitioner–Appellee.

Before: WALKER, Chief Judge, WINTER and F.I. PARKER, Circuit Judges.

F.I. PARKER, Circuit Judge, and JOHN M. WALKER, JR., Chief Judge.[1]

The Immigration and Naturalization Service ("INS") appeals from the September 21, 2001 judgment of the United States District Court for the Western District of New York (Richard J. Arcara, *District Judge*), which denied the INS's motion to dismiss petitioner-appellee Athanasios Theodoropoulos's petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, and granted the writ for the limited purpose of remanding Theodoropoulos's case to the Board of Immigration Appeals ("BIA") for further proceedings. In his petition, Theodoropoulos sought release from detention, a stay of deportation, and an order vacating his deportation order, claiming that because he was convicted before the passage of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–1323, 110 Stat. 1214 ("AEDPA"), and the Illegal Immigration

---

1. The Honorable Fred I. Parker, who was the principal author of Section I of this amended opinion, passed away on August 12, 2003. He participated fully in the decision reflected by this amended opinion. The Honorable John M. Walker, Jr., is the principal author of Sections II and III of this amended opinion. This opinion supersedes the previous opinion filed on December 18, 2002 and amended on December 20, 2002, which is hereby withdrawn.

Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009 ("IIRIRA"), he should have been eligible for consideration of discretionary relief pursuant to § 212(c) of the Immigration and Nationality Act of 1952, *codified at* 8 U.S.C. § 1101 *et seq.* ("INA"). *See* 8 U.S.C. § 1182(c) (West 1996) (codification of former § 212(c)) (repealed as of April 1, 1997 by IIRIRA § 304(b)).

We conclude that Theodoropoulos failed to exhaust his administrative remedies and, thus, that the district court lacked jurisdiction to entertain the petition under 8 U.S.C. § 1252(d). Accordingly, we reverse the judgment of the district court in its entirety and remand for entry of judgment dismissing the petition.

## I. FACTUAL BACKGROUND

Habeas petitioner Athanasios Theodoropoulos, a native and citizen of Greece, was admitted to the United States as an immigrant on May 15, 1969. On March 29, 1988, Theodoropoulos was convicted in the United States District Court for the Eastern District of Pennsylvania, after a jury trial, of drug conspiracy, distribution of cocaine, possession of cocaine with intent to distribute, and aiding and abetting. *See United States v. Theodoropoulos*, 866 F.2d 587 (3d Cir.1989). The court imposed a twenty-five-year term of imprisonment.

### A. *INS Removal Proceedings*

Theodoropoulos was granted parole by the United States Parole Commission on August 26, 1999, after almost twelve years of incarceration. The INS immediately took custody of him and began deportation proceedings. On September 9, 1999, Theodoropoulos appeared before an Immi-

gration Judge ("IJ") for a removal hearing, who recounted the INS's asserted basis for removal and explained the nature of the proceedings to Theodoropoulos. Theodoropoulos told the IJ that he was requesting relief from deportation pursuant to, *inter alia,* INA § 212(c), 8 U.S.C. § 1182(c) (West 1996), which permitted an IJ to issue a discretionary waiver of deportation under certain circumstances.[2] The IJ adjourned the proceedings until the next morning to allow Theodoropoulos to consider the evidence submitted by the INS in support of removal.

At the hearing the following day, the IJ issued an oral decision in which he held that § 212(c) had been repealed by IIRIRA, which had replaced it with INA § 240A, entitled "Cancellation of Removal." The IJ further held that Theodoropoulos was statutorily ineligible for relief under § 240A because he had been convicted of an aggravated felony. *See* 8 U.S.C. §§ 1229b(a) & (b)(1)(c) (codifying § 240A); *see also* IIRIRA, § 304(b) (repealing § 212(c)). After concluding that Theodoropoulos was ineligible for any other form of relief, the IJ ordered his removal to Greece. The IJ explained the consequences of his ruling as follows:

> Q: I have found that you are statutorily ineligible for any form of relief. I have found you are removable as charged and I have ordered your removal to Greece. If you disagree with my decision, sir, you may appeal it to a higher court, to the Board of Immigration Appeals, or if you are satisfied with my decision, you may accept it today as final. Do you wish to appeal my decision, sir, or accept it?

---

**2.** Although Theodoropoulos also sought other types of discretionary waiver, he has not argued on appeal that they were improperly denied. Accordingly, we do not address them.

A: No, Your Honor, I want to be re-moved as soon as possible to my country.

Q: So, you accept my decision as final?

A: Yes, yes, I do.

Q: Government?

A: It's final, Judge.

. . . .

Q: Before I go off the record, though, sir, I want to alert you to a couple of things. First of all, because my decision is final today, you are no longer a permanent resident of the United States. Also, because of your drug conviction, which is classified as an aggravated felony, you could never live in the United States in the future.

A: Right.

. . . .

Q: If, at any time in the future, you are found in the United States . . . without having first obtained . . . advanced permission, you will have committed a Federal crime, which carries a maximum sentence of 20 years in prison. Do you understand?

A: I am aware of it, Your Honor.

The IJ's order of removal was issued that same day on a pre-printed form that contained a line at the bottom reading, "Appeal: Waived/Reserved Appeal Due By:". In the order, the district court had crossed out the words, "Reserved Appeal Due By:," leaving only the words "Appeal: Waived" unmarked.

On October 4, 1999, Theodoropoulos, then detained at the INS Federal Detention Facility in Batavia, New York, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in the Western District of New York as well as a notice of appeal to the BIA from the IJ's September 10, 1999 removal order. Despite these filings, the INS deported Theodoropoulos on October 5, 1999.

In a letter dated October 12, 1999, the BIA rejected Theodoropoulos's appeal on procedural grounds. A week later, the Immigration Court sent a letter to Theodoropoulos, informing him that based upon a review of his file, the court had found that Theodoropoulos had waived his right to appeal the IJ's decision, and that because of this waiver, the INS had considered his removal order final and had deported him. *See* 8 C.F.R. § 3.39 (West 1999) ("Except when certified to the [BIA], the decision of the Immigration Judge becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first."); 8 C.F.R. § 3.38 (West 1999) ("A Notice of Appeal . . . may not be filed by any party who has waived appeal.").

## B. *District Court Proceedings*

Theodoropoulos's habeas petition proceeded in the federal district court. On January 14, 2000, the district court ordered the INS to file an answer to the petition before March 15, 2000. In lieu of an answer, the INS filed a motion to dismiss the petition on various jurisdictional grounds.

Pursuant to 28 U.S.C. § 636(b)(1)(B), the district court assigned the matter to United States Magistrate Judge H. Kenneth Schroeder, Jr. On February 18, 2001, Judge Schroeder filed a Report and Recommendation ("R & R") recommending that the motion to dismiss be denied and that the matter be remanded to the BIA. In the R & R, Judge Schroeder incorrectly found that Theodoropoulos was convicted on drug-related charges on the basis of a guilty plea, rather than following a jury trial. Based in part on this factual error, Judge Schroeder recommended that the district court apply the "constitutional exception" to the rule requiring a habeas petitioner to exhaust his or her administra-

tive remedies before seeking relief in a federal district court, see *Johnpoll v. Thornburgh,* 898 F.2d 849, 850–51 (2d Cir. 1990) (per curiam), so that the court could consider Theodoropoulos's assertion that retroactive application of the IIRIRA provision repealing § 212(c)—and eliminating the possibility of discretionary relief from deportation for someone like Theodoropoulos—violated his due process rights. The R & R advised the district court to deny the INS's motion to dismiss and to grant Theodoropoulos's habeas petition to the extent of remanding the case to the BIA for review in light of this court's decision in *St. Cyr v. INS,* 229 F.3d 406, 421 (2d Cir.2000) ("St. Cyr I"), which held that the repeal of § 212(c) by IIRIRA does not apply to aliens who pled guilty or *nolo contendere* prior to the enactment of IIRIRA.

The INS filed objections to the magistrate's R & R arguing that *St. Cyr I* did not apply to aliens who, like Theodoropoulos, were convicted after a jury trial. Despite the INS's objections, the district court, without correcting the magistrate's erroneous factual finding, adopted the R & R, denied the motion to dismiss, and granted Theodoropoulos's petition for the limited purpose of remanding the case to the BIA for further proceedings in line with the Supreme Court's intervening affirmation of *St. Cyr. See INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) ("St. Cyr II"). The INS filed a timely notice of appeal.

Before this court, the INS renews its argument that the district court did not have jurisdiction to review Theodoropoulos's petition for habeas corpus because (1) Theodoropoulos orally waived his right to appeal the IJ's decision; (2) under 8 U.S.C. § 1252(d), Theodoropoulos was required to exhaust his administrative remedies before seeking review in federal court; (3) there are no exceptions to this statutory exhaustion requirement; (4) even if there was an exception for futility, it would not apply because appeal to the BIA would not have been futile; and (5) even if § 1252(d)'s administrative exhaustion requirement is inapplicable to habeas petitions, a judicially created exhaustion requirement exists and no constitutional exception to that requirement would apply because Theodoropoulos was convicted after a jury trial, not on a guilty plea.

Theodoropoulos argues, in return, that (1) he did not intend to waive his right to appeal; (2) section 1252(d) does not impose an exhaustion requirement on habeas petitions; (3) even if it does, an exception should be made because an appeal to the BIA would have been futile; and (4) Theodoropoulos is excused from the judicially created exhaustion requirement because his claim raises a substantial constitutional question.

## II. DISCUSSION

■■■ We review a district court's grant of a writ of habeas corpus *de novo* and the factual findings supporting the grant for clear error. *Jenkins v. Artuz,* 294 F.3d 284, 290 (2d Cir.2002). In addition, we review the question of whether the district court had subject matter jurisdiction in this case *de novo. See St. Cyr I,* 229 F.3d at 409.

As an initial matter, we note that there are several potential bases for disposing of this case. For example, an issue not raised by the parties on appeal or considered by the district court, but apparent from the record, is whether Theodoropoulos would have been eligible for § 212(c) relief irrespective of the retrospective applicability of IIRIRA, given the fact that he served more than five years in prison

on his 1988 narcotics conviction.[3] *See Buitrago–Cuesta v. INS,* 7 F.3d 291, 294–95 (2d Cir.1993) (holding that limitations added to § 212(c) by Immigration Act of 1990 applied retrospectively to preclude § 212(c) relief for alien who, like Theodoropoulos, was convicted after a trial of a drug-trafficking offense that pre-dated the 1990 amendment); *see also Reid v. Holmes,* 323 F.3d 187, 188 (2d Cir.2003) (affirming continued validity of *Buitrago–Cuesta* following Supreme Court decision in *St. Cyr II,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347); *cf. St. Cyr I,* 229 F.3d at 420 (concluding that court's holding that IIRIRA's repeal of § 212(c) was impermissibly retroactive as applied to alien who pled guilty prior to IIRIRA was consistent with reasoning of *Buitrago–Cuesta* because in that case, alien had been convicted after a jury trial); *De Cardenas v. Reno,* 278 F.Supp.2d 284, 294 (D.Conn. 2003) ("[U]nder the *St. Cyr* decisions, and the Second Circuit's decision in *Rankine [v. Reno,* 319 F.3d 93, 100 (2d Cir.2003)], it is clear that the holding of *Buitrago–Cuesta* must be read narrowly to allow retroactive application only in cases where the alien defendant's conviction is the result of a trial.").

In addition, the fact that Theodoropoulos was deported the day after his § 2241 petition was filed raises the question of whether there is still a live "case or controversy" before us. *See* U.S. Const. Art. III, § 2; *cf. Perez v. Greiner,* 296 F.3d 123, 125, 126 (2d Cir.1999) (dismissing appeal of habeas challenge to criminal conviction as moot where petitioner had been deported during pendency of appeal and no collateral consequences sufficient to satisfy "case or controversy" requirement could be discerned); *United States v. Mercurris,* 192 F.3d 290, 294–95 (2d Cir.1999) (dismissing criminal appeal following defendant's deportation where no concrete collateral consequences could be discerned).

Finally, during the pendency of Theodoropoulos's appeal, this court has definitively rejected Theodoropoulos's constitutional claim on the merits. *See Rankine v. Reno,* 319 F.3d 93, 100 (2d Cir.2003) (holding that retrospective application of IIRIRA's repeal of § 212(c) to aliens who, like Theodoropoulos, were convicted following a jury trial prior to the elimination of § 212(c) is not impermissibly retroactive).

We do not reach any of these issues, however, because we determine that Theodoropoulos's failure to exhaust his administrative remedies deprived the district court of subject matter jurisdiction to entertain his habeas petition. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("[When the lower federal court] lack[s] jurisdiction, [the appellate court has] jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.") (internal quotation marks omitted)

---

**3.** Former § 212(c) of the INA, as amended by § 511 of the Immigration Act of 1990, Pub.L. No. 101–649, 104 Stat. 5042, provides:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title. *The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.*

8 U.S.C.A. § 1182(c) (West 1996) (emphasis added).

(first two alterations in original); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (holding that "there is no unyielding jurisdictional hierarchy" with respect to the order in which a court must address jurisdictional questions).

## A. *Waiver of Right to Appeal to the BIA*

■ Although Theodoropoulos argues that his statements before the IJ did not waive his right to appeal the IJ's decision to the BIA, and thus do not preclude federal review of his claims, this court finds his statements to be clear evidence of waiver. After the IJ announced that Theodoropoulos was statutorily ineligible for relief and would be removed to Greece, he explained to Theodoropoulos that he could either accept the decision as final or appeal the decision to a higher court or the BIA. In response to the IJ's query as to whether Theodoropoulos wanted to appeal the decision, Theodoropoulos stated, "No, Your Honor, I want to be removed as soon as possible to my country." When the court again asked if Theodoropoulos accepted his decision as final, Theodoropoulos affirmed his satisfaction with the ruling for a second time. In light of the court's clear explanation of the consequences of Theodoropoulos's agreement with the decision and Theodoropoulos's repeated acknowledgment of his acceptance of the decision, we find appeal to the BIA was waived. *See Matter of Shih*, 20 I. & N. Dec. 697, 697–99 (BIA 1993) (finding petitioner, who made statements more ambiguous than those here, had waived his right to appeal).

■ Having determined that there was a waiver, we further conclude that Theodoropoulos's subsequent effort to file a Notice of Appeal was without effect. *See* 8 C.F.R. § 3.38 (West 1999) ("A Notice of Appeal ... may not be filed by any party who has waived appeal."); *see also* 8 C.F.R. § 3.39 (West 1999) ("Except when certified to the [BIA], the decision of the Immigration Judge becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken, whichever occurs first."); *Shih*, 20 I. & N. Dec. at 699 (BIA 1993) (holding that because petitioner had waived appeal before IJ, timely notice of appeal was without effect). Accordingly, we turn to the question of whether Theodoropoulos's waiver of his full administrative remedies deprived the district court of jurisdiction to consider his habeas petition.

## B. *Applicability of Statutory Administrative Exhaustion Requirement to Habeas Petitions*

■ The INS argues that § 1252(d) of the INA required Theodoropoulos to exhaust his administrative remedies before seeking habeas review of the IJ's order of deportation. Section 1252(d), entitled "Review of final orders," provides that:

> A court may review a final order of removal only if—(1) the alien has exhausted all administrative remedies available to the alien as of right, and (2) another court has not decided the validity of the order, unless the reviewing court finds that the petition presents grounds that could not have been presented in the prior judicial proceeding or that the remedy provided by the prior proceeding was inadequate or ineffective to test the validity of the order.

On its face, § 1252(d) seems to apply to all forms of review, including habeas review. Indeed, subsection (2)'s reference to other courts and prior judicial proceedings plainly contemplates habeas or collateral review. Moreover, the exhaustion requirement set forth in subsection (1) echoes that in 28 U.S.C. § 2254, which governs state habeas review and requires applicants to

have "exhausted the remedies available in the courts of the State" before seeking federal habeas review.

In *St. Cyr II,* however, the Supreme Court declined to read certain limitations imposed by AEDPA and IIRIRA on "judicial review" or "review" as applying to habeas review. *See* 533 U.S. at 311, 121 S.Ct. 2271. The Court's decision, therefore, raises the question of whether the limitations imposed by § 1252(d) on a court's ability to "review" final orders of deportation extend to habeas corpus review. We conclude that they do.

The *St. Cyr II* decision concerned provisions and circumstances distinct from those with which we are presented here. First, in *St. Cyr II,* the Court was considering provisions that stripped courts of jurisdiction to review immigration decisions. *See* AEDPA § 401(e) (repealing express grant of habeas jurisdiction contained in former INA § 1105a(10)); 8 U.S.C. § 1252(a)(2) (enumerating "[m]atters not subject to judicial review," including final orders of removal entered on the basis of an alien's conviction for certain offenses). Noting that there is "a strong presumption in favor of judicial review of administrative action and [a] longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction," *id.* at 298, 121 S.Ct. 2271, the Court held that to construe the provisions at issue as foreclosing habeas review would raise a substantial constitutional question as to whether the provisions violated the Suspension Clause of the Constitution, *id.* at 533 U.S. at 305, 121 S.Ct. 2271; *see* U.S. Const. Art. I, § 9.

Accordingly, the Court applied the statutory canon of construction under which a court is obligated to construe a statute to avoid serious constitutional questions if an alternative interpretation is fairly possible. *See id.* at 299–300, 121 S.Ct. 2271 (discussing the canon). Observing that "[i]n the immigration context, 'judicial review' and 'habeas corpus' have historically distinct meanings," the Court held that the terms "review" and "judicial review" as used in § 401(e) and § 1252(a)(2) did not include habeas corpus and, therefore, that neither IIRIRA nor AEDPA stripped federal courts of jurisdiction to review habeas petitions. *Id.* at 311, 121 S.Ct. 2271.

Significantly, the Court signaled that it might not have construed the terms "review" and "judicial review" narrowly as applying only to direct review had the alternative reading not created a substantial constitutional concern:

> If it were clear that the question of law could be answered in another judicial forum, it might be permissible to accept the INS' reading of § 1252[ (a)(2) ]. But the absence of such a forum, coupled with the lack of a clear, unambiguous, and express statement of congressional intent to preclude judicial consideration on habeas of such an important question of law, strongly counsels against adopting a construction that would raise serious constitutional questions. Accordingly, we conclude that habeas jurisdiction under § 2241 was not repealed by AEDPA and IIRIRA.

*Id.* at 314, 121 S.Ct. 2271.

The problems addressed by the Court in *St. Cyr II* are not present in this case. Specifically, to construe § 1252(d)'s limitations on "review" as applying to habeas corpus would not raise a significant constitutional question because that section does not purport to strip courts of jurisdiction altogether; it simply imposes an exhaustion requirement on such jurisdiction. Administrative exhaustion requirements, which are commonplace, do not conflict with the "strong presumption in favor of judicial review of administrative action" or trigger the "longstanding rule requiring a

clear statement of congressional intent." *St. Cyr II*, 533 U.S. at 298, 121 S.Ct. 2271. Indeed, earlier this year this court found no constitutional hurdles to the imposition of a judicially created exhaustion requirement to habeas petitioners challenging final orders of removal. *See Beharry v. Ashcroft*, 329 F.3d 51, 61 (2d Cir.2001); *see also Rojas–Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir.2003) (applying judicially created exhaustion to habeas petitions in immigration context).

Thus, unlike the Court in *St. Cyr II*, we are not faced with a substantial constitutional question and, therefore, we need not resort to canons of statutory construction beyond the most basic one: construing § 1252(d) according to its plain meaning. Accordingly, we hold that, by its plain language, § 1252(d)'s mandate that unless a petitioner "has exhausted all administrative remedies available," a "court may [not] review a final order of removal," 18 U.S.C. § 1252(d), applies to all forms of review including habeas corpus. In doing so, we join those circuits that have specifically decided that issue, which have been unanimous in holding that the exhaustion requirement applies in the context of habeas corpus proceedings. *See Duvall v. Elwood*, 336 F.3d 228, 231 n. 5 (3d Cir.2003) (holding that "requisites of § 1252(d)(1) do indeed apply to petitions for habeas corpus, notwithstanding the fact that the statute does not specifically reference habeas corpus"); *Sundar v. INS*, 328 F.3d 1320, 1324–25 (11th Cir.2003); *See also Kurfees v. INS*, 275 F.3d 332, (4th Cir.2001) (holding that INA exhaustion requirement applicable before IIRIRA, 8 U.S.C. § 1105a(c), applied to habeas petitions as well as on direct review); *cf. Noriega–Lopez v. Ashcroft*, 335 F.3d 874, 880 & n. 4 (9th Cir.2003) (declining to decide whether § 1252(d) applies in the habeas context).

 We recognize that reading the term "review" in § 1252(d) as applying to habeas review would mean that this court reads the same term in the same statute in two different ways, which would conflict with "the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (internal quotation marks omitted). However, this "presumption is not rigid," and the meaning of identical words "well may vary to meet the purposes of the law." *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 213, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001) (internal quotation marks omitted). Unlike the specific provisions at issue in *St. Cyr II*, which sought to foreclose judicial review of certain INS decisions, at least one of the purposes served by the exhaustion requirement contained in § 1252(d) is to ensure that the INS, as the agency responsible for construing and applying the immigration laws and implementing regulations, has had a full opportunity to consider a petitioner's claims before they are submitted for review by a federal court. *See Beharry*, 329 F.3d at 56 (discussing "numerous purposes" served by administrative exhaustion); *see also McCarthy v. Madigan*, 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992); *McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) (observing that one purpose of exhaustion doctrine is to allow administrative agencies to carry out their responsibilities and "to discover and correct [their] own errors."). This goal would be entirely undermined if an alien could simply bypass administrative remedies and direct review and, instead, assert all claims by way of a habeas petition filed pursuant to 28 U.S.C. § 2241. Moreover, although § 1252(d) fails to ex-

pressly mention habeas corpus or § 2241 (as required by *St. Cyr II* to effect a repeal of habeas jurisdiction), its recitation in subsection (2) of the effect that prior judicial proceedings have on the scope of a subsequent court's review seems plainly to contemplate habeas review.[4]

## C. *Possible Exceptions to the Exhaustion Requirement*

■ Theodoropoulos argues that even if § 1252(d) applies to habeas review, an exception to its administrative exhaustion requirement should be made because he raises a substantial constitutional claim and the BIA lacks jurisdiction to adjudicate constitutional issues. *See, e.g., United States v. Gonzalez–Roque*, 301 F.3d 39, 47–48 (2d Cir.2002) (noting that "the BIA does not have jurisdiction to adjudicate constitutional issues") (internal quotation marks omitted). But the antecedent question to Theodoropoulos's constitutional claim—that IIRIRA is impermissibly retroactive when applied to petitioners like him—is whether the IJ properly interpreted IIRIRA's repeal as applying to Theodoropoulos. An appeal from the IJ's determination would have enabled the BIA to review this interpretation and either affirm or deny it. *See, e.g., Adelphia Communications Corp. v. FCC*, 88 F.3d 1250, 1256 (D.C.Cir.1996) ("[A]lthough a constitution-al attack upon a statute need not be raised before [an] agency, a constitutional attack upon an agency's interpretation of a statute is subject to the exhaustion requirement."); *cf. Bell v. Reno*, 218 F.3d 86, 90 (2d Cir.2000) ("We must affirm the agency's construction of a statute that Congress charges the agency with enforcing as long as that interpretation is reasonable.").

■ Theodoropoulos further contends that, in any event, an appeal to the BIA would have been futile because it would not have overruled the IJ's interpretation of IIRIRA. While the "[c]ommon law (or 'judicial') exhaustion doctrine ... recognizes judicial discretion to employ a broad array of exceptions that allow a plaintiff to bring his case in district court despite his abandonment of the administrative review process," this array of exceptions—including futility—is simply not available when the exhaustion requirement is statutory. *Beharry*, 329 F.3d at 58 (quoting *Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir.1998)). Instead, as a general rule, courts are required to strictly enforce statutory exhaustion requirements. *See id.; see also Booth v. Churner*, 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (stating that "we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"); *McCarthy*, 503

---

**4.** We note that earlier this year this court stated that "the Supreme Court's decision in *St. Cyr* makes clear that a statute must, at a minimum, explicitly mention either 'habeas corpus' or '28 U.S.C. § 2241' in order to limit or restrict § 2241 jurisdiction." *Wang v. Ashcroft*, 320 F.3d 130, 141 (2d Cir.2003). In *Wang*, however, this court was considering § 2442(d) of the Foreign Affairs Reform and Restructuring Act of 1988, Pub.L. No. 105–277, 112 Stat. 2681–822 (codified as Note to 8 U.S.C. § 1231), which, like the provisions at issue in *St. Cyr II*, purported to eliminate habeas jurisdiction in certain instances. *Wang*, 320 F.3d at 140–41. Furthermore, its statement concerning limitations on jurisdiction was based on the Supreme Court's statement in *St. Cyr II* that because " '[n]either [of the relevant IIRIRA jurisdiction-stripping provisions] explicitly mentions habeas, or 28 U.S.C. § 2241, ... neither provision speaks with sufficient clarity to *bar* jurisdiction pursuant to the general habeas statute.' " *Id.* (quoting *St. Cyr II*, 533 U.S. at 312–13, 121 S.Ct. 2271) (emphasis added). Thus, to the extent *Wang* can be read as extending *St. Cyr II* to lesser restrictions on habeas review, such as a requirement of administrative exhaustion, it was dicta.

U.S. at 144, 112 S.Ct. 1081 ("Where Congress specifically mandates, exhaustion is required.").

There may be some limited circumstances in which an exception to the general rule might apply. In *Booth*, for example, the Supreme Court suggested that a party cannot be required to exhaust a procedure from which there is no possibility of receiving any type of relief. *Booth*, 532 U.S. at 736 & n. 4, 121 S.Ct. 1819. The Court stated that "[w]ithout the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the [complainant] with nothing to exhaust." *Id.* Regardless of the precise boundaries of this possible exception, we find that it would not apply to the case at hand because an appeal to the BIA did provide Theodoropoulos with the possibility of relief.

Specifically, the BIA could have overruled the IJ's construction of IIRIRA's repeal of § 212(c) as applying retrospectively to petitioners like Theodoropoulos. It is true that prior to Theodoropoulos's hearing before the IJ, the Attorney General had issued an opinion stating that § 212(c) relief was not available to aliens whose applications for relief were pending when IIRIRA was enacted. *See Matter of Soriano*, 21 I. & N. Dec. 516, 533, 1997 WL 33347804 (Op. Att'y Gen. Feb. 21, 1997). Under 8 C.F.R. § 1003.1(h)(1)(ii), however, the BIA had the authority to refer Theodoropoulos's case to the Attorney General for review, and the Attorney General, during such review, could have revised her decision in *Soriano, see* 8 C.F.R. § 1003.1(g). It was not implausible that the BIA would have made such a referral. Prior to the Attorney General's decision in *Soriano,* a majority of the BIA members had disagreed with the Attorney General's view of whether § 212(c) relief

was available to aliens whose applications were pending when AEDPA was enacted. Moreover, the Attorney General's decision in *Soriano* had effectively been rejected by several circuits prior to Theodoropoulos's removal proceedings. *See, e.g., Henderson v. INS*, 157 F.3d 106, 129–30 (2d Cir.1998). In addition, just one month before Theodoropoulos' time to appeal expired, the District of Connecticut cast serious doubt on the applicability of *Soriano*'s reasoning to cases like Theodoropoulos's, whose INS removal proceedings were initiated after the effective dates of both IIRIRA and AEDPA. *See Dunbar v. INS*, 64 F.Supp.2d 47, 53–55 (D.Conn.1999), *aff'd in part sub nom., St. Cyr. I*, 229 F.3d 406, *aff'd sub nom., St. Cyr II*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347; *rev'd in part sub nom, Domond v. INS*, 244 F.3d 81 (2d Cir.2001).

Given the uncertain status of *Soriano,* the BIA's prior adoption of an approach opposite to that set forth in *Soriano,* and *Dunbar*'s adoption of the view espoused by Theodoropoulos, it is more than a theoretical possibility that Theodoropoulos could have obtained some form of relief through an appeal to the BIA. Indeed, in January 2001, the Attorney General, responding to decisions by several federal courts and hundreds of challenges to *Soriano* that had been filed by aliens in federal courts, reversed her decision in *Soriano* in order to implement a uniform nationwide procedure. *See* Executive Office for Immigration Review, Final Rule, "Section 212(c) Relief for Certain Aliens in Deportation Proceedings Before April 24, 1996," 66 FR 6436–01, 2001 WL 47410 (EOIR January 22, 2001) (final rule authorizing aliens whose applications were pending prior to AEDPA's enactment to apply for § 212(c) relief); *see also* Executive Office for Immigration Review, Proposed Rule: "Section 212(c) Relief for Aliens With Certain Criminal Convictions Before April 1,

174

1997," 67 FR 52627–01, 2002 WL 1835324 (EOIR August 13, 2002) (proposed rule that would authorize aliens who pled guilty to certain offenses prior to AEDPA's enactment to apply for § 212(c) relief).

In light of the foregoing, we conclude that Theodoropoulos is not excused from his clear and unambiguous failure to exhaust his administrative remedies. This conclusion renders Theodoropoulos's claims outside the jurisdiction of the federal courts. As such, we do not reach the question of whether Theodoropoulos was entitled to seek § 212(c) relief.

## III. CONCLUSION

In conclusion, we find that Theodoropoulos failed to exhaust administrative remedies and that, in the absence of exhaustion, the district court lacked jurisdiction to review his habeas petition. Accordingly, we reverse the district court's order denying the INS's motion to dismiss and remanding Theodoropoulos's claim for further BIA proceedings, and we remand to the district court for entry of judgment dismissing the petition for lack of subject matter jurisdiction. This opinion supersedes the previous opinion filed in connection with this appeal on December 18, 2002, which is hereby withdrawn.