**Keila PULINARIO, Petitioner–Appellee,**

v.

**Glenn GOORD, Commissioner of Corrections, Respondent–Appellant.**

**No. 03–2958–PR.**

United States Court of Appeals, Second Circuit.

Dec. 23, 2004.

David Crow, The Legal Aid Society Criminal Appeals Bureau, New York, NY, Barry A. Bohrer (on the brief), Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., New York, NY, John Chun (on the brief), New York, NY, for Petitioner–Appellee, of counsel.

Michael J. Miller, Assistant District Attorney for Thomas J. Spota, District Attorney of Suffolk County, Riverhead, NY, for Respondent–Appellant, of Counsel.

Present: CARDAMONE, KATZMANN, and RAGGI, Circuit Judges.

### SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be and hereby is **AFFIRMED.**

Respondent–Appellant Glenn Goord appeals from the judgment of the United States District Court for the Eastern District of New York (Weinstein, *J.*), granting the petition for a writ of habeas corpus. *See Pulinario v. Goord,* 291 F.Supp.2d 154 (E.D.N.Y.2003). We assume the parties' familiarity with the underlying facts and procedural history of the case. For the reasons that follow, we affirm the judgment of the district court.

"We review a district court's grant of a writ of habeas corpus *de novo* and the factual findings supporting the grant for clear error." *Theodoropoulos v. INS,* 358 F.3d 162, 167 (2d Cir.2004).

The Compulsory Process Clause of the Sixth Amendment to the Constitution provides that, "[i]n all criminal prosecutions,

the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. Because "[t]he right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness' testimony heard by the trier of fact," the Sixth Amendment protects a defendant's right to offer testimony of the defendant's own witnesses to establish a defense. *Taylor v. Illinois,* 484 U.S. 400, 409, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988); *see also Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

In *Taylor,* the Supreme Court recognized that, in certain circumstances, witness preclusion does not violate the Sixth Amendment, for example, as a sanction for misconduct that was "willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence." 484 U.S. at 415. Moreover, the Supreme Court held that the circumstances of that case justified preclusion: defense counsel's failure to notice an eleventh-hour alibi witness was "willful and blatant"; "the inference that [the defendant] was deliberately seeking a tactical advantage [was] inescapable"; and "the court ... ha[d] a vital interest in protecting the trial process from the pollution of perjured testimony." *Id.* at 416–17. Because the district court concluded that similar willfulness and tactical maneuvering were not present in this case, it found the state court's preclusion order constitutionally infirm and awarded Pulinario habeas relief. *See Pulinario,* 291 F.Supp.2d at 176–78.

■ Preliminarily, we note that the record in this case does not support the district court's rejection of the state trial court's express finding that Pulinario willfully violated a discovery order by making false statements to the prosecution's expert witness.[1] *See* 28 U.S.C. § 2254(e)(1) (according presumption of correctness to state court's findings of fact on habeas review). Pulinario's expert witness, Dr. Linda Ledray, was to testify that Pulinario suffered from Post–Traumatic Stress Disorder ("PTSD") and Rape Trauma Syndrome ("RTS") to support Pulinario's case generally, and to support three specific affirmative defenses: extreme emotional disturbance under N.Y. Penal Law § 125.25[1][a], mental defect under N.Y. Penal Law § 40.15, and justification under N.Y. Penal Law § 35.15[2][b]. The trial court precluded Dr. Ledray's testimony concerning the specifics of Pulinario's case under N.Y.Crim. Proc. Law § 250.10[5], which permits preclusion of expert psychiatric testimony "[i]f the court finds that the defendant has willfully refused to cooperate fully in the examination ordered." N.Y.Crim. Proc. Law § 250.10[5]. The trial court based this preclusion on Pulinario's false statements to Dr. Robert Berger, the prosecution's psychiatrist, about her sexual relationship with the victim before he allegedly raped her. Relying on the fact that "[t]he defendant ... testified that in response to questions by Dr. Berger she repeatedly lied because she did not trust him," the district court ruled that "the defendant did willfully refuse to cooperate

---

1. We also note that the state trial court made no explicit finding as to Pulinario's tactical motivation. We do not pursue the matter, however, because, as discussed *infra,* we do not understand the law clearly to establish a finding of tactical motivation as a prerequisite to preclusion. Nevertheless, we conclude that habeas relief is warranted. *See Lee v. Kemna,* 534 U.S. 362, 391, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002) (Kennedy, *J.,* dissenting) ("[A]n appellate tribunal may affirm ... on any ground supported by the record."); *accord Boy Scouts of Am. v. Wyman,* 335 F.3d 80, 90 (2d Cir.2003).

fully in the examination previously ordered by this Court." Because we see no reason to suppose that the meaning of "willful" under N.Y.Crim. Proc. Law § 250.10[5] is different from the meaning of "willful" in *Taylor*, we conclude that this finding of fact is binding on federal habeas review.

■ That finding, however, is not determinative on the issue of preclusion. The Supreme Court appears to have identified the circumstances present in *Taylor* as illustrative rather than definitive of factors supporting preclusion. *See Taylor*, 484 U.S. at 414 (noting that it was "neither necessary nor appropriate ... to draft a comprehensive set of standards to guide the exercise of discretion in every possible case"). Thus, we do not understand the law to establish clearly that the absence of similar circumstances invariably bars preclusion.

The law does establish clearly, however, that "[r]estrictions on a criminal defendant's rights ... to present evidence 'may not be arbitrary or disproportionate to the purposes they are designed to serve.'" *Michigan v. Lucas*, 500 U.S. 145, 151, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). In short, state preclusion rules may not be applied mechanically; rather "a State must evaluate whether the interests served by a rule justify the limitation imposed on the defendant's constitutional right to testify," *Rock v. Arkansas*, 483 U.S. at 56, or "to present witnesses in his own defense," *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Further, in conducting such an evaluation, a court must consider the Supreme Court's admonition that "alternative sanctions" to preclusion should "be 'adequate and appropriate in most cases.'" *Lucas*, 500 U.S. at 152 (quoting *Taylor*, 484 U.S. at 413). In *Taylor*, preclusion was permissible only

because the totality of the circumstances indicated that "the case fit[ ] into the category of willful misconduct in which the severest sanction is appropriate." 484 U.S. at 417. This Court has long granted habeas relief when preclusion under § 250.10 constituted a disproportionate sanction that violated a defendant's Sixth Amendment rights. *See Ronson v. Comm'r of Corr. of the State of N.Y.*, 604 F.2d 176, 178–79 (2d Cir.1979).

In this case, the state trial court appropriately considered whether preclusion would advance the interests served by § 250.10. *See* Trial Tr. at 1496–97, *People v. Pulinario*, 2592–95 (Suffolk County Court) ("[I]f a defendant is permitted to go around and decide that they can lie to who [sic] they mistrust, then we'll have psychiatric opinions that aren't valid because they're based on false premises. And the statute ... is designed to prevent that from happening."). But nothing in the record indicates consideration of the proportionality of that sanction in light of defendant's Sixth Amendment right to call favorable witnesses and her decision to waive her Fifth Amendment right not to testify.

Relevant circumstances strongly demonstrate that this case does not fit within the boundaries set by *Rock, Taylor*, and *Lucas* in which preclusion is appropriate. As all parties concede, Pulinario's failure to be entirely truthful with the examining experts was strongly suspected before trial and, more importantly, conceded by her own counsel in his opening statement. Thus, at trial, there was no risk, akin to that in *Taylor*, that her misconduct would result in "fabricated testimony" being presented to the jury. 484 U.S. at 414.

Further distinguishing this case from *Taylor*, and more significant to any proportionality consideration, was the timing of the prosecution's preclusion motion. In *Taylor*, the court, on its own motion, pre-

cluded the defendant's alibi witness before the defense case. Here, the prosecution delayed moving to preclude Dr. Ledray's testimony until after Pulinario had taken the stand and inculpated herself in the charged homicide in order to lay the necessary foundation for her psychiatric expert. Previously, defense counsel had specifically inquired whether there was going to be any challenge to the expert testimony, and the prosecutor disingenuously stated that "she 'didn't see why [Ledray's] not going to testify.'" *Pulinario*, 291 F.Supp.2d at 167 (quoting Trial Tr. at 1200, *People v. Pulinario*, No. 2592–95) (brackets in original).

We agree with the district court that the prosecutor's decision to delay the preclusion motion until after Pulinario testified evidenced "sharp tactics," unbecoming a government advocate. *Id.* at 179; *see also Williams v. Florida*, 399 U.S. 78, 82, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) ("The adversary system of trial ... is not ... a poker game in which players enjoy an absolute right always to conceal their cards until played."); *cf. Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) (noting that prosecutor's duty "in a criminal prosecution is not that it shall win a case, but that justice shall be done"). We further agree that the maneuver "effectively 'sand-bagged' the defense," *Pulinario*, 291 F.Supp.2d at 179, securing Pulinario's waiver of her constitutional rights and her inculpatory admissions only then to deprive her of the psychiatric defense that motivated her waiver and testimony.

In sum, we need not here decide whether preclusion would have been constitutional in this case if the prosecution had moved for and been granted such relief before Pulinario took the stand. We conclude simply that preclusion was a disproportionate sanction in the particular circumstances of this case where the prosecution's deliberate delay in seeking relief imposed an intolerable burden on Pulinario's constitutional right to present her defense. In considering only whether § 250.10 had been satisfied, the state court failed to account for "the fundamental character of the defendant's right to offer the testimony of witnesses in [her] favor." *Taylor*, 484 U.S. at 414.

■ This error on the part of the state trial court was not harmless. This is true not only because the preclusion of Dr. Ledray's full testimony severely diminished the strength of Pulinario's extreme emotional disturbance, mental defect, and justification defenses, but also because of the prejudice involved in the ruling's timing, as discussed above. The error was not harmless, whether we apply the standard of *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (asking whether the error " 'had substantial and injurious effect or influence in determining the jury's verdict'" (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946))), or that of *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (asking whether the error "was harmless beyond a reasonable doubt"). *See Santana–Madera v. United States*, 260 F.3d 133, 140 (2d Cir.2001) (noting the *Brecht* and *Chapman* standards and observing that "[n]either the Supreme Court nor this Court has definitively established the proper harmless error standard to apply when a constitutional error is being evaluated for the first time on collateral review").

Accordingly, the district court's October 30, 2003 order granting Pulinario's petition for a writ of habeas corpus is hereby AFFIRMED.