[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 16, 2005
THOMAS K. KAHN
CLERK

_____

Nos. 04-12684 & 05-13721
Non-Argument Calendar

_____

BIA No. A91-391-016

CARLOS CASTRO-GARCIA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of an Order of the
Board of Immigration Appeals

_____

**(November 16, 2005)**

Before BIRCH, HULL and WILSON, Circuit Judges.

PER CURIAM:

Carlos Castro-Garcia, a Guatemalan citizen appearing with counsel, petitions for review of the Board of Immigration Appeals's ("BIA") order affirming the Immigration Judge's ("IJ") denial of asylum, withholding of removal, and protection under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., and the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. §§ 208.16 et seq. The IJ determined that Castro-Garcia was not entitled to (1) asylum because he had committed an aggravated felony, (2) withholding of removal under the INA and the CAT because his conviction for possession of cocaine with intent to distribute was a "particularly serious crime," and (3) deferral of removal under the CAT because he did not prove that it was more likely than not that he would be tortured if he was removed to Guatemala. The BIA affirmed without opinion. We DENY Castro-Garcia's petition for review.

## I. BACKGROUND

Castro-Garcia is a citizen of Guatemala who has been living in the United States for nearly twenty years. He became a lawful permanent resident of the United States in 1989. Castro-Garcia has since married a United States citizen and is the father of two children.

On 14 October 1999, Castro-Garcia was served by the Immigration and Naturalization Service ("INS")[1] with a notice to appear ("NTA"). The NTA alleged that he was a native and citizen of Guatemala, that he was admitted to the United States on 11 December 1989, and that he was convicted in a Florida state court on 25 October 1990 for selling cocaine, and again on 23 March 1998 for trafficking in cocaine. Based on that information, the NTA charged that Castro-Garcia was subject to removal from the United States under the INA for having been convicted of violating a state's controlled substance law and for having been convicted of an aggravated felony relating to illicit trafficking of a controlled substance. The record contains, in relevant part, a certified document from the Florida state court where Castro-Garcia was convicted. The document states that Castro-Garcia was adjudicated guilty of possession of cocaine with the intent to sell or deliver (the lesser included offense of trafficking in cocaine with which he was originally charged) and was sentenced to one year of imprisonment.

Castro-Garcia subsequently filed an application for asylum and withholding of removal, wherein he stated that he was persecuted on account of his political opinion. On 23 April 2002, Castro-Garcia filed a motion for a continuance, stating

---

[1] On 25 November 2002, President Bush signed into law the Homeland Security Act of 2002 ("HSA"), Pub. L. No. 107-296, 116 Stat. 2135. The HSA created a new Department of Homeland Security ("DHS"), abolished the INS, and transferred its functions to the new department. Nevertheless, because this case was initiated while the INS was still in existence, this opinion refers to the agency as the INS.

that he may have suffered a stroke. With the motion, Castro-Garcia included a letter from his doctor, who stated that Castro-Garcia presented symptoms of weakness and numbness in his extremities, had slurred speech, and had several instances of headaches. The doctor also indicated that Castro-Garcia was at risk for a recurrent episode.

At his initial master calendar hearing, the IJ determined that Castro-Garcia was removable. Castro-Garcia admitted that he was not eligible for asylum based on his convictions, but indicated that he was going to seek withholding of removal relief under the INA and the CAT. During his subsequent removal hearing, his attorney conceded that trafficking was a particularly serious offense (a concession that Castro-Garcia now claims was baseless).

At the hearing, Castro-Garcia testified that when he was seventeen he joined a local civilian patrol. The group served as a nightly lookout for his village and would warn families about the arrival of the government. At that time, according to Castro-Garcia, the Guatemalan government routinely killed innocent people who opposed the government.

In his first year with the patrol, the Guatemalan military kidnaped him and his cousins. Castro-Garcia was beaten up by his interrogators, called a guerilla, and accused of stockpiling weapons. After a week of detention, he escaped with some cousins and fled to Mexico and later to the United States. Other than his

4

cousin and uncle who live in Canada, Castro-Garcia claims that every other person in the civilian patrol was killed by the government.

To bolster his claims, Castro-Garcia submitted a letter from a family friend who is a colonel in Guatemala. The letter stated that Castro-Garcia was involved in a dangerous situation "as a leftist, in other words, as a member of the guerilla groups against the Government of this country." R at 180. The letter explained that some of Castro-Garcia's family and friends who also participated had been assassinated and it warned that Castro-Garcia would experience the same fate if he returned to Guatemala. When the IJ questioned him over the colonel's claims that he was a guerilla, Castro-Garcia denied any involvement beyond his service in the civilian patrol.

Castro-Garcia's medical condition was also at issue in the hearing. On direct, he testified that he was on medication for high blood pressure and persistent headaches. After the government, citing relevance, objected to this line of questioning, Castro-Garcia's attorney informed the IJ that she wanted to establish his medical condition, but admitted that she was not certain if there was anything that would affect his testimony. The IJ then engaged in a colloquy with Castro-Garcia regarding his drug and alcohol abuse. After cross-examination, Castro-Garcia was asked on redirect if his stroke caused any long term medical problems. The government again objected, and Castro-Garcia's attorney responded that

5

Castro-Garcia sometimes has lapses of memory. At that point, the IJ concluded that Castro-Garcia should have raised the issue prior to the hearing if he thought it was going effect his testimony.

After considering the testimony and the evidence in the record, the IJ found Castro-Garcia removable based on the 1998 conviction of possession with intent to distribute cocaine. The IJ concluded that Castro-Garcia was ineligible for cancellation of removal and asylum because he was convicted of an aggravated felony. The IJ further determined that Castro-Garcia was ineligible for withholding of removal under the INA and CAT because his conviction constituted a particularly serious crime.

Castro-Garcia's claim for deferral of removal under the CAT was also rejected because he failed to prove that it was more likely than not that he would be tortured if he returned to Guatemala. Even though Castro-Garcia had suffered mistreatment in Guatemala, the IJ noted that it had been seventeen years since his association with the guerillas and that he had returned three to five times without any problems. While the evidence indicated that Guatemala was still a dangerous place, the IJ concluded that it did not show that Castro-Garcia would be targeted on his return. Additionally, the IJ discounted the colonel's letter warning of the dangers to former guerillas since Castro-Garcia had testified that he was in fact not a guerilla.

Following the IJ's decision, Castro-Garcia filed a notice of appeal with the BIA, arguing that the IJ erred as a matter of fact and law in denying his request under the CAT. In the appeal, he stated the IJ's findings of fact were clearly erroneous and noted that he and his family suffered harassment, persecution, and torture by the Guatemalan government. Contrary to the IJ's assessment that the civil strife in Guatemala was largely resolved, he contended that he had provided sufficient documentation to show that the situation in Guatemala was still dangerous and that his life would be in jeopardy upon his return. Thus, Castro-Garcia argued that the IJ erred in deciding that he had not shown that it was more likely than not that he would be tortured if he was removed to Guatemala. Castro-Garcia asserted the same arguments in his brief to the BIA. The BIA affirmed the IJ's decision without opinion.

On appeal, we noted a possible jurisdictional issue and requested that the parties address the matter in their briefs. In addressing the jurisdictional question, Castro-Garcia conceded that the permanent rules of INA applied.[2] See U.S.C. § 1252 et seq. Although the government moved to dismiss the petition for review,

---

[2] Our jurisdictional question and Castro-Garcia's response were answered by § 106 of the recently enacted REAL ID Act. This section provides that the permanent rules now govern all immigration cases. Pub. L. No. 109-13, Div. B, § 106(a)-(d), 119 Stat. 231, 310-11 (2005). Specifically, § 106(b) provides that the REAL ID Act Amendments shall apply retroactively.

we determined that jurisdiction was proper because Castro-Garcia raised constitutional claims.

While this appeal was pending before us, Castro-Garcia filed a habeas corpus petition in the district court pursuant to 28 U.S.C. § 2241 as well as a complaint for declaratory and injunctive relief, wherein he raised the same basic arguments that he set forth in his brief on appeal. We then entered an order transferring the § 2241 petition from the district court to us, as required by § 106(c) of the REAL ID Act, and consolidating it with Castro-Garcia's original appeal. See Pub. L. No. 109-13, Div. B, § 106(c), 119 Stat. 231, 311 (2005). After informing Castro-Garcia that the § 2241 petition was transferred to our court and consolidated with his original appeal, Castro-Garcia responded that he would not be filing a supplemental brief and would stand on the briefs he had previously filed.[3]

## II. DISCUSSION

Our jurisdiction arises under the INA, as amended by the REAL ID Act of 2005. See 8 U.S.C. § 1252 et seq. Under this statute, we lack jurisdiction to

---

[3] Accordingly, to the extent that Castro-Garcia makes different arguments in his § 2241 petition than what he raised in his original brief on appeal, these arguments are waived because Castro-Garcia has failed to argue them before our court. See Rowe v. Schreiber, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998) (issues not clearly raised in the briefs are considered abandoned). In any event, Castro-Garcia raised the same basic arguments in his original brief on appeal and in his § 2241 petition.

review a final order of removal of "(1) an alien (2) who is removable (3) because he committed a criminal offense enumerated in the statute." Resendiz-Alcaraz v. U.S. Att'y Gen., 383 F.3d 1262, 1266 (11th Cir. 2004) (internal quotations omitted); see 8 U.S.C. § 1252(a)(2)(c). Castro-Garcia does not contest that he is an alien described in this provision. Instead, Castro-Garcia argues that he qualifies for the exception to the jurisdictional bar set forth in the INA which provides:

> Nothing in subparagraph (B) or (c), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

Id. § 1252 (a)(2)(D).

On appeal, Castro-Garcia raises three challenges to the BIA's order affirming the decision of the IJ. First, he argues that the IJ violated his due process rights by not holding an evidentiary hearing to determine if he had committed a "particularly serious crime." Second, he argues that his due process rights were violated because he received ineffective assistance of counsel when his counsel conceded that his conviction was for a "particularly serious crime." Third, he argues that his due process rights were violated by the denial of the deferral of removal under the CAT when, all taken together, the IJ made adverse credibility determinations, issued biased comments, relied on speculation and conjecture, and

9

applied an incorrect legal standard. We address each of these constitutional challenges, and the related jurisdictional issues, in turn.

A. Failure to Hold an Evidentiary Hearing

First, Castro-Garcia argues that the IJ violated his due process rights by failing to conduct an evidentiary hearing to determine if his conviction for possession of cocaine with intent to distribute was a "particularly serious crime." We review de novo an alien's constitutional challenges. Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1341 (11th Cir. 2003) (per curiam).

In immigration cases, 8 U.S.C. § 1252(d)(1) allows a court to review a final order of removal only if the alien has exhausted all of the administrative remedies available to him. Fernandez-Bernal v. Att'y Gen. of the U.S., 257 F.3d 1304, 1317 n.13 (11th Cir. 2001). Thus, we generally lack jurisdiction to review any claims not raised before the BIA. Id. We have noted that other circuits have stated in dicta that constitutional challenges and some due process claims do not require exhaustion because the BIA does not have the authority to adjudicate those claims; however, the BIA can consider those claims if the BIA can provide a remedy. Sundar v. INS, 328 F.3d 1320, 1325 (11th Cir. 2003). Although we have never specifically determined which due process claims require exhaustion, other circuits have determined that procedural due process claims, as well as procedural errors argued in due process terms, must be raised before the BIA. See Bonhometre v.

10

Gonzalez, 414 F.3d 442, 445-48 (3rd Cir. 2005) (addressing appeal of habeas corpus petition that was converted to a petition for review pursuant to the REAL ID Act); Soberanes v. Comfort, 388 F.3d 1305, 1309 (10th Cir. 2004) (noting that the jurisdictional prohibition "extends not only to substantive issues, but to constitutional objections that involve administratively correctable procedural errors, even when those errors are failures to follow due process"); Theodoropoulos v. INS, 358 F.3d 162, 172-74 (2nd Cir.) (noting "as a general rule, courts are required to strictly enforce statutory exhaustion requirements"), cert. denied, __ U.S. __, 125 S. Ct. 37 (2004); Curfews v. INS, 275 F.3d 332, 337 (4th Cir. 2001) (declining to review constitutional challenges "that could have been addressed by the BIA"); Mendes v. INS, 197 F.3d 6, 12 (1st Cir. 1999) (finding waived due process claims raised for the first time in petition for review); Rashtabadi v. INS, 23 F.3d 1562, 1567 (9th Cir. 1994) (same). We agree with our sister circuits.

Castro-Garcia's first due process argument is that the IJ erred in not conducting an evidentiary hearing before determining that his conviction constituted a "particularly serious crime." This is an allegation of procedural error argued in due process terms. Because Castro-Garcia failed to raise this constitutional claim before the BIA, he has not exhausted his remedies and we will not consider it.

11

B.  Ineffective Assistance of Counsel

Second, Castro-Garcia argues that his due process rights were violated when his attorney conceded during the removal hearing that his conviction was for a "particularly serious crime."  Under the INA, an alien may raise ineffective assistance of counsel in his motion to reopen a final administrative order of removal.  Dakane v. U.S. Attorney Gen., 371 F.3d 771, 774 (11th Cir. 2004) (per curiam); see 8 U.S.C. § 1229a(c)(7).  Thus, if the alien can prove that his counsel was ineffective, the BIA can grant the motion to reopen and remand the case to the IJ for further proceedings.  See Matter of Lozada, 19 I&N Dec. 637, 639, aff'd, 857 F.2d 10, 14 (1st Cir. 1988).

As noted previously, in immigration cases, 8 U.S.C. § 1252(d)(1) allows a court to review a final order of removal only if the alien has exhausted all of the administrative remedies available to him.   Fernandez-Bernal, 257 F.3d at 1317 n.13.  Thus, we generally lack jurisdiction to review any claims not raised before the BIA.  Sundar, 328 F.3d at 1323.  We have never expressly stated whether an alien is required to file a motion to reopen with the BIA and exhaust his administrative remedies before he can raise an ineffective assistance of counsel claim in a petition for review.  Yet, several circuits that have addressed the issue have concluded that this claim must be presented to the BIA and exhausted before it can be considered on appeal.  See Soberanes, 388 F.3d at 1309; Sswajje v.

12

<u>Ashcroft</u>, 350 F.3d 528, 533 (6th Cir. 2003) ("The proper avenue for raising ineffective assistance of counsel is by filing a motion to reopen proceedings with the BIA."); <u>Goonsuwan v. Ashcroft</u>, 252 F.3d 383, 389-90 (5th Cir. 2001) ("The available administrative remedy, coupled with Congress' vesting of jurisdiction in the agency, counsels against permitting an exception to the jurisdictional exhaustion requirement for claims of ineffective assistance of counsel not raised before the BIA."); <u>Bernal-Vallejo v. INS</u>, 195 F.3d 56, 64 (1st Cir. 1999) (declining "to review the ineffective assistance claim because [petitioner] has failed to exhaust his administrative remedies."); <u>Mojsilovic v. INS</u>, 156 F.3d 743, 748 (7th Cir. 1998) (declining to review ineffective assistance claim "because she did not raise it before [the BIA]"); <u>Arango-Aradondo v. INS</u>, 13 F.3d 610, 614 (2nd Cir. 1994). Again, we agree with our sister circuits.

Because the BIA has procedures in place to consider ineffective assistance of counsel claims and has a method of granting the alien relief, we conclude that Castro-Garcia was required to exhaust his remedies before the BIA. Motions to reopen may be filed up to ninety days after the final order removal is issued. 8 U.S.C. § 1229a(c)(7)(c)(i). In this case, the BIA issued its order on 27 April 2004, and on 27 May 2004, Castro-Garcia, through new counsel, petitioned this court for review. Having retained new counsel prior to the expiration of the statutory period for a motion to reopen, Castro-Garcia offers no legitimate reason why he did not

13

raise his ineffective assistance of counsel claim before the BIA. Since he did not exhaust his administrative remedies, we therefore decline to review his second constitutional claim.

## C. Deferral of Removal under the CAT

Third, Castro-Garcia argues that his due process rights were violated by the denial of the deferral of removal under the CAT when, all taken together, the IJ made adverse credibility determinations, issued biased comments, relied on speculation and conjecture, and applied an incorrect legal standard. Specifically, Castro-Garcia avers that the IJ wrongfully discounted Castro-Garcia's testimony and a letter from a Guatemalan army colonel which stated that Castro-Garcia was a member of a guerilla group. He also maintains that the IJ continually badgered him about his involvement with the guerillas and that the IJ erred in disregarding his medical condition and the fact that it might cause memory problems. Additionally, he contends both that the IJ's conclusions on the current political and social conditions in Guatemala were based on speculation and conjecture and that the IJ applied an incorrect legal standard which required Castro-Garcia to prove that he would be tortured on account of his political opinion.

As with his other due process claims, Castro-Garcia did not raise this bundled due process claim before the BIA. Since this involves allegations of adverse credibility determinations, bias, and erroneous factual and legal

14

conclusions by the IJ, it was certainly within the power of the BIA to consider this due process claim and provide an appropriate remedy, if needed. Thus, since this is neither a "constitutional challenge to the INA itself [nor] a due process claim that could not be resolved by a BIA decision," we once again lack jurisdiction to consider his third constitutional claim. Sundar, 328 F.3d at 1325; see 8 U.S.C. § 1252(d)(1).

### III. CONCLUSION

In this case, Castro-Garcia appealed the BIA's decision affirming the IJ's denial of asylum, withholding of removal, and protection under the INA and the CAT. Since Castro-Garcia did not exhaust the administrative remedies available to him regarding his due process claims, we therefore lack jurisdiction over his petition to review them. **PETITION DENIED.**