**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 12, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WLADIMIR COLMENARES
CARPIO,

        Petitioner,

v.

ERIC J. HOLDER, United States
Attorney General,[*]

        Respondent.

No. 08-9536

---

**PETITION FOR REVIEW FROM A FINAL ORDER**
**OF THE BOARD OF IMMIGRATION APPEALS**

---

Philip M. Alterman, Stern Elkind Curray & Alterman, Denver, CO, for Petitioner.

James E. Grimes, Senior Litigation Counsel (Linda S. Wernery, with him on the brief), Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

---

Before **HENRY**, Chief Judge, **MURPHY** and **TYMKOVICH**, Circuit Judges.

---

**HENRY**, Chief Judge.

---

[*] Eric J. Holder is substituted for Michael B. Mukasey, pursuant to Fed. R. App. P. 43(c)(2).

In 2002, Wladimir Colmenares Carpio (Mr. Colmenares), along with his mother and sister, entered the United States on a K visa, which permits alien fiancées and fiancés (K-1 visa holders) and their children (K-2 visa holders), to enter the United States to marry United States citizens. Under our immigration laws, upon such a marriage, eligible K-1 visa holders and their children under age twenty-one may adjust their status to that of lawful conditional permanent residents. *See* 8 U.S.C. §§ 1186a, 1255(d).

Upon the marriage of his mother to a United States citizen, and over six months prior to his twenty-first birthday, Mr. Colmenares applied for a conditional adjustment of status under 8 U.S.C. § 1255(d). On September 23, 2005, almost three years after he entered the United States, and almost two-and-one-half years after he filed his application, the United States Citizenship and Immigration Services (USCIS) denied his request on the grounds that he was no longer under age twenty-one. An immigration judge agreed with that conclusion and the Board of Immigration Appeals (BIA) affirmed.

Mr. Colmenares now argues that, under 8 U.S.C. § 1255(d), K-2 visa holders applying for adjustment of status need not be under twenty-one when those applications are adjudicated. In response, the government defends the date-of-adjudication theory. It also urges an alternative ground for denial of Mr. Colmenares's application: that an immigrant visa was not "immediately available" to him under 8 U.S.C. § 1255(a).

In light of the terms used in the relevant statutes, decisions from other courts, and the policies underlying our immigration laws, we conclude that a K-2 visa holder who timely applies for an adjustment of status under 8 U.S.C. § 1255(d) must be under twenty-one when he or she seeks to enter the United States, not when his or her subsequent application for adjustment of status is finally adjudicated. We reject the government's proposed alternative ground for affirmance because the BIA did not reach that issue and the government's argument is inconsistent with a USCIS regulation and case authority. In light of the fact that Mr. Colmenares was under twenty-one when he sought to enter the United States, we reverse the decision of the BIA and remand for proceedings consistent with this opinion.

## I. BACKGROUND

Mr. Colmenares is a native and citizen of Venezuela. In early 2002, his mother became engaged to James Sterling, a United States citizen working in Venezuela. Mr. Colmenares, his mother, and his sister sought to accompany Mr. Sterling to the United States and to become lawful permanent residents here.

### A. The application process for lawful permanent residence

Under the applicable immigration laws, an alien with children who is engaged to a United States citizen and who seeks to enter the United States with them and become a lawful permanent resident must proceed through a detailed procedure involving six steps. *See generally Choin v. Mukasey*, 537 F.3d 1116,

3

1118-19 (9th Cir. 2008) (describing the process of applying for an adjustment of status). First, on behalf of the alien and his or her minor children, the affianced citizen must file a petition for a visa with the Secretary of Homeland Security. *See* 8 U.S.C. § 1184(d)(1). In order to obtain the visa, the citizen must establish that he or she and his or her fiancé(e) had "previously met in person within 2 years before the date of filing the petition, have a bona fide intention to marry, and are legally able and actually willing to conclude a valid marriage in the United States within a period of ninety days after the alien's arrival[.]" *Id.*; *see also* Form for I-129 Petition, *available at* http://www.uscis.gov/files/Form I-129.

Second, upon the USCIS's approval of the citizen's petition, the citizen's fiancé(e) and his or her minor children must apply for K visas with the United States consular office in their country of origin. *See* 8 U.S.C. § 1184(d); 22 C.F.R. § 41.81 (State Department regulation addressing the issuance of K visas by consular officers). In this context, a "child" is defined as an unmarried person under twenty-one. *See* 8 U.S.C. § 1101(b)(1). The fiancé(e) and the child must file various documents establishing their eligibility for the visas and submit to a medical examination. *See Verovkin v. Still*, No. C 07-3987, 2007 WL 4557782, at *6 (N.D. Cal. Dec. 21, 2007) (discussing the application process). The consular office must determine that the K-2 applicant is a child (*i.e.*, under twenty-one years of age). *See id.*; 22 C.F.R. § 41.81(c).

Third, once the K visas are issued (requiring action in both the United States

4

and the country of origin), the fiancé(e) and his or her minor children may enter the United States. Fourth, the citizen and his or her fiancé(e) must marry within ninety days of the fiancé(e)'s entry. 8 U.S.C. § 1184(d). If the marriage does not occur within that period, the fiancé(e) and his or her children must depart from the United States, and they are subject to removal if they do not comply. *Id.*

Prior to 1986, the status of the non-citizen spouse and minor children was automatically adjusted to that of lawful permanent resident as soon as a valid marriage occurred. However, in 1986, Congress passed the Immigration Marriage Fraud Amendments (IMFA), Pub. L. 99-639, 100 Stat. 3537 (Nov. 10, 1986), which sought to deter fraud by aliens seeking to acquire lawful permanent residence in the United States based on marriage to United States citizens or lawful permanent resident aliens. Under these amendments, the now-married alien spouse and his or her children must complete a fifth step: they must file an application for an adjustment of status "to that of . . . alien[s] lawfully admitted to the United States on a conditional basis." 8 U.S.C. § 1255. The relevant statute provides in part:

> (a) The status of an alien who was . . . admitted . . . into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

5

. . . .

> (d) . . . The Attorney General may not adjust, under subsection (a) of this section, the status of a nonimmigrant alien described in section 1101(a)(15)(K) of this title except to that of an alien lawfully admitted to the United States on a conditional basis under section 1186a of this title as a result of the marriage of the nonimmigrant (or, in the case of a minor child, the parent) to the citizen who filed the petition to accord that alien's nonimmigrant status under section 1101(a)(15)(K) of this title.

*Id.*

The 1986 amendments also provide that the initial adjustment of status granted to K-1 and K-2 visa holders is conditional. *See* 8 U.S.C. § 1186a(a)(1) (stating that "an alien spouse . . . and an alien son or daughter . . . shall be considered, at the time of obtaining the status of an alien lawfully admitted for permanent residence, to have obtained such status on a conditional basis"). "[D]uring the 90-day period before the second anniversary of the alien's obtaining the status of lawful admission for permanent residence," the couple and the children of the non-citizen may proceed to a sixth step in the adjustment process: filing a petition to have the conditional status removed. *See id.* § 1186a(d)(1). In the joint petition, the couple must affirm that they are still married and that they did not enter into marriage for immigration purposes. *Id.* They must also provide information about their places of residence and their employment histories over the previous two years. *Id.*

### B. Mr. Colmenares's applications and the decisions of the immigration judge and the BIA

6

Mr. Colmenares and his family completed the first four steps in this process of seeking lawful, non-conditional permanent residence. First, Mr. Sterling filed a visa petition on behalf of Mr. Colmenares's mother, as well as his sister and Mr. Colmenares himself, and the USCIS granted the petition. Second, Mr. Colmenares sought a K-2 visa from the United States consular officer in Venezuela, who issued it to him on September 24, 2002, when Mr. Colmenares was twenty years old. Third, on September 26, 2002, Mr. Colmenares, his mother, and his sister entered the United States. Fourth, Mr. Colmenares's mother married Mr. Sterling on November 16, 2002, within ninety days of her entry into the United States, as required by 8 U.S.C. § 1184(d)(1).

On January 2, 2003, Mr. Colmenares, his mother, and his sister applied for adjustments of status with the Denver District Office of USCIS. Mr. Colemenares turned twenty-one on July 14, 2003, while his application for adjustment of status was still pending.

Over two years later, on September 23, 2005, the USCIS denied Mr. Colmenares's application. It reasoned that he was over twenty-one on the date of *adjudication* of the application. The Department of Homeland Security ("DHS") then served Mr. Colmenares with a Notice to Appear in removal proceedings, alleging that Mr. Colmenares was removable under 8 U.S.C. § 1227(a)(1)(B) (as an alien who was present in the United States in violation of the law) and under §

7

1227(a)(1)(C)(i) (as an alien who had remained in the United States longer than permitted).

At immigration removal hearings held August 1, 2006, and December 11, 2006, Mr. Colmenares appeared before an immigration judge and conceded removability. He indicated, however, that he had properly applied for an adjustment of status pursuant to 8 U.S.C. § 1255. On December 11, 2006, the immigration judge issued a three-page decision concluding that Mr. Colmenares was ineligible for the requested adjustment. The substantive portion of the immigration judge's decision is contained within two paragraphs, which state:

> The Court agrees with the Department of Homeland Security that pursuant to Immigration and Nationality Act Section 245(d) this respondent is not eligible to adjust his status in this country. The second sentence of that section in the Immigration and Nationality Act indicates that the Attorney General may not adjust the status of a nonimmigrant who entered the country on a K visa, except as the result of the marriage of that respondent to the citizen who filed the petition to accord the K status. *There is an exception, but the exception is described "in the case of the minor child." The respondent is over 21, he no longer qualifies as a minor child under the Immigration and Nationality Act . . . .*
>
> *The Court would note that this problem of "aging up" has bedeviled applicants for a long time. The Congress of the United States gives the Court to address [sic] the problem with the Child Status Protection Act, which was effective in the year 2002. Unfortunately, the Child Status Protection Act does not extend benefits to aliens who enter the country on K visas.* It does seem that this respondent is not eligible to adjust his status pursuant to [8 U.S.C. § 1255(d)], and so the Court must pretermit his application.

Rec. vol. I, at 141-42 (emphasis added).

Mr. Colmenares appealed the immigration judge's decision to the BIA,

8

pursuant to 8 C.F.R. § 1003.1(b).  The BIA's one-paragraph decision "affirm[ed] the decision of the Immigration Judge denying [Mr. Colmenares's]  application for adjustment of status for the reasons set forth by the Immigration Judge . . . ."  Rec. vol. I, at 2.  This appeal followed.

## II.    DISCUSSION

Mr. Colmenares now argues that the BIA committed legal error by construing 8 U.S.C. § 1255(d) to bar his adjustment of status because he was over twenty-one when his application was adjudicated.  He maintains that he remained eligible for adjustment of status because he was under twenty-one when he filed his application.  In response, the government maintains that the BIA's decision constitutes a reasonable interpretation of an ambiguous statute to which this court must defer under the principles set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  In the alternative, the government argues that Mr. Colmenares is not eligible for an adjustment of status because he cannot satisfy the requirement set forth in 8 U.S.C. § 1255(a) that "an immigrant visa [was] immediately available to him at the time his application [was] filed."

We begin our analysis with the question of *Chevron* deference.  We agree with the government that § 1255(d) is ambiguous with respect to the time at which a K-2 visa holder must be under twenty-one to qualify for an adjustment of status.  Unlike other provisions of our immigration laws, § 1255(d) does not expressly

9

address that question.  Nevertheless, for the reasons set forth below, we conclude that *Chevron* deference is not warranted here.

We then proceed to analyze the decisions of the BIA and the immigration judge under the less deferential framework set forth in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), considering whether those decisions have "the power to persuade." *Id.* at 140.  We review the terms of related statutes, the reasons set forth in the decisions at issue as justification for the date-of-adjudication approach, the decisions of other courts that have considered that approach, and the policies underlying our immigration laws.  We conclude that, contrary to the decisions of the BIA and the immigration judge, it is the date on which a K-2 visa applicant *seeks to enter* the United States under 8 U.S.C. § 1184(d) that should be used to determine whether he or she is a "minor child" under § 1255(d).

Finally, we turn to the government's argument that the denial of Mr. Colmenares's application for an adjustment of status should be upheld on the alternative ground that an immigrant visa was not "immediately available" when he filed his application.  *See* 8 U.S.C. § 1255(a).  Applying the Supreme Court's decision in *SEC v. Chenery*, 332 U.S. 194 (1947), we decline to consider this argument because it was not addressed by either the BIA or the immigration judge.  Further, we note in passing that the government's construction does not comport with USCIS regulations and case authority.

**A. The BIA's decision is not entitled to deference under *Chevron*.**

10

Under *Chevron*, we defer to an agency's interpretation of a statute that it is responsible to implement if (1) the statute is ambiguous or silent as to the issue at hand and (2) the agency's interpretation is neither "arbitrary, capricious, [n]or manifestly contrary to the statute." *Herrera-Castillo v. Holder*, 573 F.3d 1004, 1007 (10th Cir. 2009) (citing *Chevron*, 467 U.S. at 844, 842-45) (alteration in the original). Deference is warranted if "Congress delegated authority to the agency generally to make rules carrying the force of law" and the agency's interpretation of the statute was issued pursuant to that authority. *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001). "Delegation of such authority may be shown in a variety of ways, as by an agency's power to engage in adjudication or notice-and-comment rulemaking, or by some other indication of a comparable congressional intent." *Id.*

When, as here, the agency's interpretation was issued in an adjudication, we must consider whether the decision constitutes binding precedent within the agency. *Olson v. Fed. Mine Safety & Health Review Comm'n*, 381 F.3d 1007, 1014 (10th Cir. 2004). If the interpretation is not precedential within the agency, then the interpretation does not qualify for *Chevron* deference. *Id.* (noting that "it would be extremely odd to give . . . decisions [by administrative law judges] greater legal force in court than they have within the agency itself" (quoting Thomas W. Merrill & Kristin E. Hickman, *Chevron's Domain*, 89 GEO. L.J. 833, 908 (2001) (footnote omitted)).

11

Here, the BIA's decision was issued by a single Board member and does not rely on prior BIA decisions that establish binding precedent. Under the BIA's own regulations, a single member lacks the authority to create rules of law that bind the agency in other cases. *See* 8 C.F.R. § 1003.1(e)(6)(ii) (indicating the need for a three-person panel if a precedent must be established); *id.* § 1003.1(g) (stating that "[b]y majority vote of the permanent Board members, selected decisions of the Board rendered by a three-member panel or by the Board *en banc* may be designated to serve as precedents in all proceedings involving the same issue or issues").

We acknowledge that this court has occasionally afforded *Chevron* deference to unpublished, single-member decisions by the BIA. *See* Aple's Br. at 8 (citing *Ochieng v. Mukasey*, 520 F.3d 1110, 1114 (10th Cir. 2008) and *Niang v. Gonzales*, 422 F.3d 1187, 1196-97 (10th Cir. 2005)). However, those single member decisions themselves involved applications of BIA precedent. *See Ochieng*, 520 F.3d at 1114-15 (explaining that the BIA's one-member decision at issue had itself applied a definition of "child abuse" set forth in a prior, precedential BIA decision); *Niang*, 422 F.3d at 1199-1200 (discussing the definition of "social group" applied by the BIA in precedential decisions); *see also Marmolejo-Campos v. Holder*, 558 F.3d 903, 911 (9th Cir. 2009) (en banc) (explaining that if the legal principle at issue has been resolved in a precedential BIA decision "we apply *Chevron* deference regardless of whether the order under

12

review is the precedential decision itself or a subsequent unpublished order that relies upon it").

In contrast, in Mr. Colmenares's case, neither the BIA's one-member decision nor the prior decision of the immigration judge relied on any BIA precedent. As a result, the BIA's decision does not "carry the force of law," *Mead Corp.*, 533 U.S. at 226, and is not entitled to *Chevron* deference. *Accord Quinchia v. Att'y Gen'l*, 552 F.3d 1255, 1258 (11th Cir. 2008) (holding that "*Chevron* deference is not appropriate" as to "a non-precedential decision issued by a single member of the BIA that does not rely on existing BIA or federal court precedent"); *Rotimi v. Gonzales*, 473 F.3d 55, 57-58 (2d Cir. 2007) (same); *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1011-14 (9th Cir. 2006) (employing similar analysis to deny *Chevron* deference to a non-precedential BIA decision). *But see Gutnik v. Gonzales*, 469 F.3d 683, 689-90 (7th Cir. 2006) (applying *Chevron* deference to a single-judge, non-precedential BIA decision because "judicial deference to the Executive Branch is especially appropriate in the immigration context") (internal quotation marks and alteration omitted).

Because the BIA's decision does not "carry the force of law," *Mead Corp.*, 533 U.S. at 226, we must examine the BIA's decision in Mr. Colmenares's case under the framework set forth in *Skidmore*, 323 U.S. at 140. *See McGraw v. Barnhart*, 450 F.3d 493, 500 (10th Cir. 2006) (discussing *Skidmore* deference). The paramount consideration is whether the BIA's decision has "the power to

13

persuade." *Skidmore*, 323 U.S. at 140. We examine "the thoroughness evident in [the BIA's] consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements." *Id.*; *see also Mead*, 533 U.S. at 228 (explaining that, under *Skidmore*, the degree of deference given informal agency interpretations will "vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position").

## B. Under 8 U.S.C. § 1255(d), age at the time a K-2 visa is sought determines eligibility for adjustment of status.

To assess the reasoning of the BIA and the immigration judge under *Skidmore*, we must first consider the language of the applicable statute. *See Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (stating that "[a]s in all statutory construction cases, we begin with the language of the statute"). We must also consider "the specific context in which the language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). This is "a holistic endeavor," taking into account, at a minimum, the "statute's full text, language as well as punctuation, structure, and subject matter." *United States Nat'l Bank of Oregon v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 455 (1993) (internal quotation marks omitted).

### 1. Section 1255(d)'s cross-reference to 8 U.S.C. § 1101(a)(15)(K) suggests that the age at which an applicant "seeks to enter" the country is controlling.

14

Here, as we have noted, 8 U.S.C. § 1255(d) allows the adjustment of status of "a minor child" who has obtained a K-2 visa. In this context, "a minor child" is defined as "an unmarried person under twenty-one years of age." 8 U.S.C. § 1101(b)(1). However, § 1255(d) does not itself directly address the question of *when* a K-2 visa holder applying for an adjustment of status must meet the under twenty-one requirement. Nevertheless, the statute does explain that the triggering event that allows the adjustment is "the marriage of the nonimmigrant (or in the case of the minor child) the parent." *Id.* § 1255(d). And, importantly, it identifies the individuals whose status may be adjusted in the following terms: "non-immigrant alien[s] *described in section 1101(a)(15)(K)*." (emphasis added).

With regard to "the minor child," the plain language of the referenced statute—§ 1101(a)(15)(K)—offers a description that applies *before* the marriage occurs and *before* the alien enters the United States. It refers to

> . . . an alien
> who–
> (i) *is the fiancee or fiance of a citizen of the United States* (other than a citizen described in section 1154(a)(1)(A)(viii)(I) of this title) and who *seeks to enter* the United States solely to conclude a valid marriage with the petitioner within ninety days after admission;
> . . . or
> (iii) *is the minor child of an alien described in clause (i)* or (ii) and is accompanying, or following to join, the alien;

(emphasis added).

The statute thus focuses the inquiry on the age of the minor child *when* his parent is engaged and *when* he or she "seeks to enter the United States" on a K-1

15

visa.  *Id.* § 1101(a)(15)(K)(i) & (iii).  That time-specific description of the

qualifying status supports the view that the K-2 visa applicant's age should be

determined at the time he or she seeks to enter the country.

**2.  The use of age-independent terms in the statute governing permanent adjustments of status, 8 U.S.C. § 1186a, further supports the age-when-seeking-to-enter view.**

This interpretation of § 1255's age requirement is further supported by the

text of a related statute, 8 U.S.C § 1186a.  As we have noted, § 1186a sets forth

the procedures by which an alien conditionally admitted to the United States may

have that conditional status removed.  It provides that such a request must be made

"during the 90-day period before the second anniversary of the alien's obtaining

the status of lawful admission for permanent residence."  8 U.S.C. §

1186a(d)(2)(A).  Significantly, the individuals who may request the removal of

conditional status are described as "an alien spouse" and "an alien son or

daughter."  *Id.* § 1186a(a)(1).  Those terms are defined as follows:

> The term "alien spouse" means an alien who obtains the
> status of an alien lawfully admitted for permanent residence
> (whether on a conditional basis or otherwise)--
> . . .
> (B) under section 1184(d)[**] of this title as the fiancee or
> fiance of a citizen of the United States, . . .
> . . .
> (2) The term "alien son or daughter" means an alien who
> obtains the status of an alien lawfully admitted for

---

[**]  As noted above, section 1184(d) sets for the requirements for obtaining
K-1 and K-2 visas from a consular officer.

16

permanent residence (whether on a conditional basis or otherwise) *by virtue of being the son or daughter of an individual through a qualifying marriage*.

*Id.* § 1186a(g)(1)-(2) (emphasis added).

In our view, it is significant that § 1186a(1) uses the term "alien son or daughter" to describe a K-2 visa holder who has had his or her status adjusted on a conditional basis. That phrase is broader than the phrase used to describe an applicant for a K-2 visa–"a minor child" of a "fiancee or fiance of a citizen of the United States." *Id.* § 1101(a)(15)(K)(i) & (iii). In particular, nothing in § 1186a's use of the phrase "alien son or daughter" suggests that he or she must be under twenty-one years of age.

The government rightly observes that § 1186a "say[s] nothing about how these aliens achieve their [conditional adjustment of] status." *See* Aple's Br. at 19. Nevertheless, Congress's use of an age-related term ("minor child") in § 1255(d) and § 1101(a)(15)(K)(i) & (iii) to describe those applying for conditional adjustments of status, when combined with its use of an age-independent term ("alien son or daughter") to describe those who have obtained conditional adjustments of status, is significant. It supports our view that if applicant for adjustment of status under § 1255(d) and 1101(a)(15)(K)(i) & (iii) is "a minor child" at the specified time (when he or she seeks to enter the country as the child of a fiancé(e)), then his or her age during a subsequent period—when the K-2 visa has been issued and his or her adjustment of status application is pending—is no

17

longer relevant.

### 3.  Under the *Skidmore* framework, the reasoning of the immigration judge and the BIA is not persuasive.

Here, the immigration judge and the BIA adopted a different view—that what is controlling in determining a K-2 visa holder's eligibility for an adjustment of status under § 1255(d) is his or her age at the time the application is adjudicated.  In support of that conclusion, the immigration judge first cited § 1255(d)'s use of the term "minor child" and reasoned that because Mr. Colmenares was no longer "a minor child," he was no longer eligible for an adjustment of status.  Second, the immigration judge explained, Congress had addressed the problem of "aging-out" in another statute, the Child Status Protection Act (CSPA), Pub. L. No. 107-208, 116 Stat. 927 (codified at 8 U.S.C. §§ 1151, 1153, 1154, 1157, 1158), which specifically provides that, in certain instances not applicable here, age is determined at the time of the filing.  In our view, neither reason has "the power to persuade," *Skidmore*, 323 U.S. at 140, and we therefore do not defer to the reasoning of the BIA and the immigration judge.

First, the use of the term "minor child," provides no indication as to *when* that status must be established.  Moreover, the immigration judge offered no reasoning as to *why* the date of adjudication should control over other possible dates, such as the date that the K-2 visa application is sought under 8 U.S.C. §

18

1184 or the date that the adjustment of status application is filed under 8 U.S.C. § 1255. In that regard, the immigration judge did not even mention the related statutory provisions that we have discussed, particularly 8 U.S.C. §§ 1101(a)(15)(K)(i) & (iii) and 1186a, which in our view lend considerable support to the view that it is age at the time a K-2 visa is sought that should control.

Second, as to the CSPA, we agree with the immigration judge that the statute does not apply to individuals like Mr. Colmenares who have obtained K-2 visas and who seek adjustment of status under 8 U.S.C. § 1255 and 8 U.S.C. § 1186a. Instead, the statute applies to petitioners seeking classification (1) as an immediate relative of a United States citizen, *see id.* § 1151(b)(2)(A); (2) as the child of a lawful permanent resident, *id.* §§ 1153(a)(2)(A), 1153(d); (3) as the child of an applicant for employment-based permanent residence, *see id.* § 1153(d); (4) as a diversity immigrant, *see id.* §§ 1153(d); and (5) as a child accompanying or following to join a refugee or asylum parent, *see id.* §§ 1157(c)(1)(2), 1158(b)(3). The CSPA provides that, in each of these instances, the controlling element is the age of the alien child on the date the petition is filed with the Attorney General. *See Padash v. INS*, 358 F.3d 1161, 1167 (9th Cir. 2004).

Congress enacted the CSPA in 2002 to address "the 'enormous backlog of adjustment of status (to permanent residence) applications' which had developed at the INS." *Padash*, 358 F.3d at 1172 (quoting H.R. Rep. No. 107-45, *2,

19

*reprinted in* 2002 U.S.C.C.A.N. at 641).  Congress sought to remedy "the predicament of these aliens, who *through no fault of their own*, lose the opportunity to obtain [a] . . . visa."  *Id.* (emphasis added) (alterations in original).

Although the delayed decisions of the USCIS, the immigration judge, and the BIA have now placed Mr. Colmenares in a similar predicament, we cannot agree with the BIA as to the implications of the CSPA for K-2 visa holders seeking adjustments of status under 8 U.S.C. §§ 1255(d) and 1186a.  The language used in §§ 1255(d) and 1186a differs from the language used in the various other adjustment statutes to which the CSPA applies.  In particular, the provisions to which the CSPA applies do not describe the person whose status may be adjusted in the same, time-specific terms that apply to Mr. Colmenares here.  *Compare, e.g.*, 8 U.S.C. § 1153(d) (using the terms "spouse" and "child" to describe individuals eligible for certain classes of immigrant visas) *with* § 1101(a)(15)(K)(i) & (iii) (using the term "minor child" of "the fiancee or fiance of a citizen of the United States . . . who seeks to enter the United States").  Thus, contrary to the immigration judge's reasoning, the fact that Congress amended other provisions with different language offers little guidance regarding the proper interpretation of the enactments now before us.

**4.  Court decisions have rejected the date-of-adjudication approach.**

The decisions of the immigration judge and the BIA are further undermined by the only circuit court decision that has addressed the date-of-adjudication

20

theory under 8 U.S.C. § 1255(d). In *Choin*, 537 F.3d 1116, the INS denied the application for an adjustment of status of a K-1 visa holder who had divorced her husband five days before the two-year anniversary of the date that she filed her application. The BIA affirmed that denial, applying (1) the IMFA provision that grants K-1 visa holders only conditional permanent residence status, 537 F.3d at 1119, until "the second anniversary of the alien's obtaining the status of lawful admission for permanent residence[,]" 8 U.S.C. § 1186(d)(2); and (2) the provision of § 1255(d) that allows adjustments of status "on a conditional basis . . . as a result of the marriage of the nonimmigrant . . . to the citizen who filed the petition [for a K-1 visa]." In the BIA's view, § 1255(d) barred adjustments of status of K-1 visa holders whose marriages no longer existed on the date their applications were adjudicated.

The Ninth Circuit disagreed with the BIA, concluding that a K-1 visa holder who marries a United States citizen in good faith remains eligible for an adjustment of status even if he or she is divorced before the petition is adjudicated. *Choin*, 537 F.3d at 1121. The *Choin* panel found "nothing in the plain language of § 254(d) [8 U.S.C. § 1255(d)]" nor in "[t]he purpose and context" of that provision "suggesting that an application that was *valid when submitted* should be automatically invalid when the petitioner's marriage ends in divorce two years later." *Id.* (emphasis added). The panel discerned no legal justification for "the automatic removal of immigrants whose marriages end in divorce while their

21

application for adjustment of status languishes in the agency's filing cabinet." *Id.*

Although Mr. Colmenares's case involves age rather than marital status, the Ninth Circuit's reasoning is equally applicable here. Mr. Colmenares's application, like Ms. Choin's, was valid when submitted. Contrary to the view of the immigration judge and the BIA, there is no indication in the statutory language that Mr. Colmenares became ineligible for an adjustment of status merely because he turned twenty-one (and twenty-two and twenty three) while waiting for an adjudication.

Additionally, a federal district court in California has rejected the BIA's date-of-adjudication theory in a case involving a K-2 visa holder like Mr. Colmenares—*i.e.*, one who turned twenty-one while his application for adjustment of status was pending. *See Verovkin*, 2007 WL 4557782, at *7-8. In that court's view, "there is no statutory requirement that K-2 visa holders demonstrate that they are still under twenty-one when they apply for permanent residence" and "[b]y imposing such a requirement, [the] USCIS applied an unreasonable interpretation of the [Immigration and Nationality Act]." *Id.* at *7; *see also id.* at *8 (reasoning that "[a]t the time he was issued a K-2 visa, [the plaintiff] had already been determined presumptively eligible for permanent residence, conditioned only on the conclusion of his mother's marriage and the completion of a two-year probationary period" and that "[the plaintiff] thus could not have

22

'aged-out' after he applied for adjustment of status because his age was relevant neither at the time his I-129F petition was submitted nor at the time it was adjudicated"). The *Verovkin* court relied on the same step-by-step process for obtaining K visas and filing applications for adjustment of status that we have considered here. *See id.* at *6 (discussing the regulations governing applications for K visas and concluding that "presumptive eligibility for permanent residence [including the under-twenty-one requirement for minor children] is determined prior to the applicant's entry into the United States").

**5. The date-of-adjudication approach is fundamentally unfair.**

Finally, in our view, the reading of the statute adopted by the immigration judge and the BIA violates basic principles of common sense and fairness. As one district court has observed, under the date-of-adjudication theory, a minor child could receive a K-2 visa up until the day of his twenty-first birthday, but that same visa would be worthless the next day. *Verovkin*, 2007 WL 4557782 at *7. And, under that theory, even an individual who obtained a K-2 visa and applied for an adjustment of status several years before his or her twenty-first birthday would have no way of knowing whether the entire lengthy process might prove futile merely because of the length of time that the application "languishe[d] in the agency's filing cabinet." *Choin*, 537 F.3d at 1121; *Verovkin*, 2007 WL 4557782 at *7. We see no indication in the statutory language that Congress authorized such an unfair practice.

23

Accordingly, in light of the language of 8 U.S.C. §§ 1101(a)(15)(K) and 1255(d), we hold that a K-2 visa holder who applies for an adjustment of status must be under twenty-one at the time he or she "seeks to enter the United States" as the child of "the fiancee or fiance of a citizen of the United States." *See* § 1101(a)(15)(K). In light of the language used in § 1101(a)(15)(K), the date that the individual "seeks to enter the United States" may be plausibly read as *either* (1) the date that the United States citizen files a petition for K-1 and K-2 visas with the Secretary of Homeland Security under 8 U.S.C. § 1184(d)(1), *or* (b) the date that the K-1 and K-2 visa applications are filed with the consular officer in the country of origin. *See* 22 C.F.R. § 41.81 (State Department regulation addressing the issuance of K visas by consular officers).

We need not decide which date is controlling here. Although the record does not indicate the exact dates on which Mr. Colmenares (1) filed a petition for a K visa with the Secretary of Homeland Security under 8 U.S.C. § 1184(d)(1), and (2) filed an application for a K visa with a consular officer in Venezuela (after the Secretary of Homeland Security approved the petition), the record does establish that Mr. Colmenares obtained a K-2 visa on September 24, 2002, when he was twenty years-old. Thus, he was under twenty-one when he "[sought] to enter the United States" as the child of "the fiancee or fiance of a citizen of the United States." 8 U.S.C. § 1101(a)(15)(K). Mr. Colemenares's age at the time of adjudication of his application for an adjustment of status did not render him

24

ineligible for that adjustment. We therefore reverse the BIA's ruling based on the date-of-adjudication theory.

### C. Applying *SEC v. Chenery*, 332 U.S. 194 (1947), we do not reach the government's suggested alternative ground for affirmance.

In its appellate brief, the government invokes 8 U.S.C. § 1255(a) as an alternative ground for affirmance of the BIA decision. As we have noted, section 1255(a) states

> The status of an alien . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) *an immigrant visa is immediately available to him at the time his application is filed*.

*Id.* § 1255(a) (emphasis added). The government contends that no immigrant visa is "immediately available" to Mr. Colmenares and that the denial of his application for an adjustment of status should be affirmed on that ground alone.

In light of the Supreme Court's decision in *Chenery*, we do not reach this argument. "[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." 332 U.S. at 196; *see also Uanreroro v. Gonzales*, 443 F.3d 1197, 1205 (10th Cir. 2006) ("We are not at liberty to search for grounds to affirm that were not relied upon by the agency.") (citing *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004) and

*Mickeviciute v. INS*, 327 F.3d 1159, 1162-63 (10th Cir. 2003)).

In Mr. Colmenares's case, neither the BIA nor the immigration judge addressed the 8 U.S.C. § 1255(a) argument now raised by the government. Additionally, a USCIS regulation and a district court decision undermine the government's argument. *See* 8 C.F.R. § 214.2(k)(6)(ii); *Verovkin*, 2007 WL 4557782 at *7. Section 214.2(k)(6)(ii) provides that "[a] K-1 beneficiary and his or her minor children may apply for adjustment of status to lawful permanent resident under section 245 of the Act [8 U.S.C. § 1255]," and that "[*u*]*pon approval of the application the director shall record their lawful admission for permanent residence* in accordance with that section and subject to the conditions prescribed in section 216 of the Act [8 U.S.C. § 1186a]." (emphasis added). In *Verovkin*, the court held that "[t]his regulation provides a basis for K-2 visa holders to obtain permanent resident status, even though the INA itself does not expressly provide that K-2 visa holders between the ages of eighteen and twenty-one are eligible for an immigrant visa." 2007 WL 4557782 at * 5. Accordingly, we cannot be certain that the BIA would affirm the denial of Mr. Colmenares's petition on § 1255(a) grounds. *See Diallo v. U.S. Dep't of Justice,* 548 F.3d 232, 235 (2d Cir. 2008) (permitting affirmance on alternative grounds when the court "can confidently predict that upon a reconsideration cleansed of errors, the agency would reach the same result").

Thus, "the court is powerless to affirm the administrative action by

substituting what [may] be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency." *Chenery*, 322 U.S. at 196. Accordingly, we decline to consider the government's argument for affirmance under 8 U.S.C. § 1255(a).

### III. CONCLUSION

In light of the plain language of 8 U.S.C. §§ 1255(d) and 1101(a)(15)(K), the decisions of other courts, and considerations of fairness and common sense, we hold that an individual who applies for an adjustment of status under § 1255(d) must be under twenty-one years of age on the date that he or she "seeks to enter the United States." *See* § 1101(a)(15)(K). The date that the individual "seeks to enter the United States" may be plausibly read as *either* (1) the date that the United States citizen files a petition for K-1 and K-2 visas with the Secretary of Homeland Security under 8 U.S.C. § 1184(d)(1), *or* (2) the date that the K-1 and K-2 visa applications are filed with the consular officer in the country of origin. *See id.*; 22 C.F.R. § 41.81.

Here, Mr. Colmenares was under twenty-one on both of those dates. Thus, contrary to the decision of the BIA and the immigration judge, Mr. Colmenares's age at the time of the adjudication of his application for an adjustment of status did not render him ineligible for that adjustment.

We do not consider the government's alternative ground for affirmance—that an immigrant visa is not "immediately available to Mr. Colmenares under §

27

1255(a)—because the BIA did not reach that issue.

Accordingly, we GRANT Mr. Colmenares's petition for review, REVERSE the decision of the BIA ordering Mr. Colmenares's removal, and REMAND for proceedings consistent with this opinion.