Selvaraj v. Garland

BIA
Cheng, IJ
A206 061 698

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of September, two thousand twenty-two.

PRESENT:
> PIERRE N. LEVAL,
> RAYMOND J. LOHIER, JR.,
> MYRNA PÉREZ,
> *Circuit Judges.*

_____

SASHIKUMAR SELVARAJ,
> *Petitioner,*

v.                                      20-817

                                        NAC

MERRICK B. GARLAND, UNITED
STATES ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:          Genet Getachew, Brooklyn, NY.

FOR RESPONDENT:          Jeffrey Bossert Clark, Acting
                         Assistant Attorney General;
                         Jessica A. Dawgert, Senior
                         Litigation Counsel; Jacob A.

Bashyrov, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED in part and DENIED in part.

Petitioner Sashikumar Selvaraj, a native and citizen of Sri Lanka, seeks review of a February 10, 2020 decision of the BIA affirming a May 10, 2018 decision of an Immigration Judge ("IJ") denying asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *See In re Sashikumar Selvaraj,* No. A 206 061 698 (B.I.A. Feb. 10, 2020), *aff'g* No. A 206 061 698 (Immig. Ct. N.Y.C. May 10, 2018). We assume the parties' familiarity with the underlying facts and procedural history, to which we refer only as necessary to explain our decision to grant in part and deny in part the petition.

We review the IJ's decision as supplemented by the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). The standards of review are well established. *See* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are

2

conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary"); *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018) (explaining that we review adverse credibility determinations under the substantial evidence standard); *Paloka v. Holder*, 762 F.3d 191, 195 (2d Cir. 2014) (reviewing factual findings for substantial evidence and questions of law and application of law to fact *de novo*). An asylum applicant must demonstrate that he has suffered past persecution or that he has a well-founded fear of persecution on account of a protected ground, the latter of which requires showing that he would be "singled out individually for persecution" or that there is a "pattern or practice" of persecution of "a group of persons similarly situated to the applicant." 8 C.F.R. § 1208.13(b)(2). To determine whether an asylum applicant has sustained his burden of proof, the agency "weigh[s] the credible testimony along with other evidence of record." 8 U.S.C. § 1158(b)(1)(B)(ii).

Substantial evidence supports both (1) the agency's determination that Selvaraj was not credible as to his claim that he was tortured by Sri Lankan authorities on account of

his imputed political opinion, *i.e.*, his supposed support for the Liberation Tigers of Tamil Elam ("LTTE"), and (2) the agency's conclusion that Selvaraj did not establish a likelihood of torture on account of his status as a "failed asylum seeker," *See* ECF No. 2 at 4.  However, we remand for the agency to consider in the first instance whether he may be eligible for asylum based on a pattern or practice of persecution of Tamils.

## I.    Credibility Determination

"Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant . . . , the consistency between the applicant's or witness's written and oral statements . . . , the internal consistency of each such statement, [and] the consistency of such statements with other evidence of record . . . , without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor."  8 U.S.C. § 1158(b)(1)(B)(iii).  "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable

4

fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008); *accord Hong Fei Gao*, 891 F.3d at 76. The agency's determination that Selvaraj was not credible as to his past persecution claims is supported by substantial evidence.

First, the agency reasonably relied on the fact that Selvaraj's testimony was vague and unresponsive. 8 U.S.C. § 1158(b)(1)(B)(iii). We defer to such a finding, especially where, as here, there is also a specific finding of inconsistent testimony. *See Majidi v. Gonzales*, 430 F.3d 77, 81 n.1 (2d Cir. 2005) (noting that "a fact-finder who assesses testimony together with witness demeanor is in the best position to discern . . . whether a witness who hesitated in a response was nevertheless attempting truthfully to recount what he recalled of key events" (quotation marks and brackets omitted)); *see also Li Hua Lin v. U.S. Dep't of Just.*, 453 F.3d 99, 109 (2d Cir. 2006) ("We can be . . . more confident in our review of observations about an applicant's demeanor where . . . they are supported by specific examples of inconsistent testimony."). The record supports the IJ's findings that Selvaraj's testimony was at times vague and

5

unresponsive. For example, when asked on cross-examination if he went to the hospital, Selvaraj did not initially answer the question directly even after it was asked twice, and he only vaguely described treatment for "internal injuries." *See* ECF. No. 16 at 86.

Second, the agency reasonably relied on inconsistencies between Selvaraj's testimony and the written statement he submitted with his asylum application. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). Selvaraj wrote that he was a seaman who travelled internationally and was away from Sri Lanka for specific periods (February 2006 to July 2007, December 2007 to September 2008, and March to December 2009). He wrote that he was detained three times, after each of his trips abroad: for six days beginning August 10, 2007; for four days in September 2008; and for two days beginning December 4, 2009. But he testified inconsistently that he was arrested and detained in February 2007 (when his application stated he was outside of Sri Lanka), and he gave different and specific dates for his time outside of Sri Lanka. He also gave inconsistent statements regarding whether he arrived in Canada in 2009 or 2010. Considered together, these

6

inconsistencies are significant and call into question the alleged arrests. *See Tu Lin v. Gonzales*, 446 F.3d 395, 402 (2d Cir. 2006) ("[E]ven where an IJ relies on discrepancies or lacunae that, if taken separately, concern matters collateral or ancillary to the claim, the cumulative effect may nevertheless be deemed consequential by the fact-finder." (quotation marks and citation omitted)).[1]

Third, the agency's adverse credibility determination is supported by a significant omission in Selvaraj's wife's letters. Selvaraj alleged that, sometime between 2006 and 2009, police arrested and beat his wife, and he testified that, in 2012, they detained her for a day and attempted to sexually assault her. But his wife does not mention these events in any of her several letters or her statement to police. The agency did not err in relying on these omissions because her 2013 letter is addressed to "USA Immigration" and

---

[1] Selvaraj's argument that he should not have been expected to recall precise dates of events from a decade ago is not compelling because he gave precise dates when asked, rather than saying he could not remember the dates. *See Majidi*, 430 F.3d at 80 ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (quotation marks omitted)).

7

clearly was written to support her husband's asylum application, but the only harm she describes is that "unknown people" came to their home looking for Selvaraj and threatened them. *See Xiu Xia Lin*, 534 F.3d at 167 (permitting consideration of discrepancies between the petitioner's testimony and letters from third parties); *see also Hong Fei Gao*, 891 F.3d at 78–79, 81 (cautioning against reliance on omissions in third-party statements but holding that the probative value of an omission depends on whether the omitted facts are ones that an applicant or witness "would reasonably have been expected to disclose under the relevant circumstances").

In addition to these findings, the IJ reasonably found Selvaraj's credibility further undermined by his testimony that he voluntarily returned to Sri Lanka several times after the alleged torture, despite his alleged fear that he would "definitely" be killed if he returned there. *See Kone v. Holder*, 596 F.3d 141, 150–51 (2d Cir. 2010) (stating that, while voluntary return trips to one's home country are insufficient on their own to establish a lack of credibility, they may be relevant to credibility depending on the

circumstances).

Given the omissions and inconsistencies, and the IJ's supported demeanor finding, substantial evidence supports the adverse credibility determination. *See Hong Fei Gao*, 891 F.3d at 76; *Xiu Xia Lin*, 534 F.3d at 165–66. That determination is dispositive of Selvaraj's asylum, withholding of removal, and CAT claims insofar as they were predicated on his alleged past persecution or his imputed political opinion. *See Paul v. Gonzales*, 444 F.3d 148, 156–57 (2d Cir. 2006).

## II. Claims Relying on Objective Evidence

Selvaraj also argues that he established a well-founded fear of persecution through objective evidence of (1) a pattern or practice of persecution of Tamils, and (2) a likelihood that he would be persecuted or tortured based on his status as a failed asylum seeker. The Government argues that he did not raise these claims before the IJ, except that his counsel asserted a CAT claim based on his status as an asylum seeker.

### A. Pattern or Practice of Persecution of Tamils

The BIA erred in finding that Selvaraj had not raised a

pattern-or-practice claim before the IJ. Because it was undisputed that Selvaraj is Tamil and since the country conditions evidence provides some support for the pattern-or-practice claim, we remand for the agency to consider the evidence in the first instance. *See Paul*, 444 F.3d at 150, 154-55 (remanding where agency failed to consider future persecution based on widespread persecution of applicant's religious group where it was established that applicant practiced that religion).

Although Selvaraj's principal claim was that Sri Lankan authorities suspected him of working with the LTTE, a Tamil separatist group that was at war with the government until 2009, his asylum application and testimony also identified a fear of violence directed at Tamils in general.[2] "[A]n

---

[2] The asylum application indicated that Selvaraj was seeking asylum based on both "political opinion" and "nationality": his written statement expressed a fear of the Sri Lankan government because government forces "still . . . arrest Tamils all over Sri Lanka and detain them" and subject these "civilians" to "assault, torture, rape, [and] killing." ECF No. 16 at 338, 345. He also asserted a fear of the LTTE and "Tamil groups who still work with the Sri Lankan forces" and "kidnap Tamils all over Sri Lanka and kill many of them." ECF No. 16 at 345. In closing, counsel asserted that Selvaraj was "subjected to past persecution on account of Tamil and also on account of imputed political opinion," ECF No. 16 at 96, and some of his country conditions evidence was submitted

applicant may prevail on a theory of future persecution despite an IJ's adverse credibility ruling as to past persecution, *so long as the factual predicate of the applicant's claim of future persecution is independent of the testimony that the IJ found not to be credible.*"  *Id.* at 154. Accordingly, the agency should have considered whether Selvaraj had a well-founded fear of future persecution as a Tamil because that claim did not depend on the credibility of his testimony.  We remand for the agency to consider the claim in the first instance because the record includes some country conditions evidence, including the 2017 State Department Human Rights Report on Sri Lanka, that the Sri Lankan government targets Tamils and that members of the Tamil community have been subjected to torture by the government. *See Diallo v. U.S. Dep't of Just.*, 548 F.3d 232, 235 (2d Cir. 2008) (explaining that remand is necessary where "we find an error in the BIA's decision on an issue that was exhausted before it, because we cannot substitute our judgement for that of the agency").

to demonstrate persecution based on "Tamil Nationality," *see* ECF No. 16 at 176.

**B. Failed Asylum Seeker**

Selvaraj did not testify to a fear of harm based on his status as a failed asylum seeker. His counsel raised this claim for the first and only time in closing arguments, asserting that "as a return asylum seeker [Selvaraj] will be pursued as a supporter of the LTTE and he will be subject to torture," but conceding that Selvaraj did not testify about this claim. ECF No. 16 at 96–97. The agency did not err in concluding that Selvaraj failed to establish a likelihood of torture on this basis.[3]

The record contains news articles describing arrests and torture of Tamils who failed to obtain asylum abroad and were returned to Sri Lanka. However, those individuals were not removed from the United States. Moreover, the individuals who were tortured were either involved with the LTTE or accused of associating with the LTTE. Selvaraj claims that he was never involved with the LTTE and, given the adverse

---

[3] Selvaraj argues that the agency should have also considered whether he was eligible for withholding of removal on this basis, but he did not exhaust that claim before the BIA, arguing only that the IJ erred by failing to consider this CAT claim. *See Lin Zhong v. U.S. Dep't of Just.*, 480 F.3d 104, 123 (2d Cir. 2007) ("[U]sually . . . issues not raised to the BIA will not be examined by the reviewing court").

credibility determination, he did not establish that the Sri Lankan government believes he is associated with the LTTE, so these articles do not establish that he is "more likely than not" to be tortured as a returning asylum seeker. *See* 8 C.F.R. §§ 1208.16(b)(1)-(2), 1208.16(c), 1208.17(a).

For the foregoing reasons, the petition for review is GRANTED in part and REMANDED for further consideration of the pattern-or-practice claim, and DENIED in remaining part. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

13